## EYERMAN v. BLAKSLEY *et al.*, *Appellants*.

78  145
154  457
78  145
e176  6  60
f176  6  62

1. **Constitutional Law**: LOCAL LAWS CHANGING THE RULES OF EVIDENCE: SPECIAL TAX BILL. The prohibition in the constitution against the general assembly passing any special or local law "changing the rules of evidence in any judicial proceeding," relates only to proceedings pending when the change is made. A city charter which makes special tax bills *prima facie* evidence of liability is not in conflict with this section, so far as respects bills issued after the enactment of the charter.

2. ———: LOCAL ASSESSMENTS: DUE PROCESS. Local assessments for sewers and other public improvements may be made without violating the constitutional provision that no person shall be deprived of life, liberty or property without due process of law.

3. **Sewer Ordinances in St. Louis.** There is nothing in section 22, article 6 of the charter of the city of St. Louis which makes it necessary that a sewer district shall be established by ordinance before the Board of Public Improvements can recommend or the Municipal Assembly can pass an ordinance for the construction of a sewer in such district. Hence, where the board recommended the passage of an ordinance for the construction of a sewer while the ordinance for the establishment of the district it was intended to drain was pending, and the two ordinances were passed and approved on the same day; *Held*, that the former ordinance was valid.

4. ———. Nor does said section make it the duty of the Board of Public Improvements in recommending the construction of a sewer to state specifically the reason for the recommendation. A declaration that it is made "in accordance with the provisions of the charter," is sufficient.

5. ———: DISTRICT SEWERS. The requirement of said section that every district sewer shall connect with a public sewer or some natural course of drainage, is sufficiently complied with if connection is made with another district sewer already constructed, of sufficient capacity and itself connecting with a public sewer.

6. **Municipal Corporations**: POWER TO IMPOSE PENALTIES: SPECIAL TAX BILL. Municipal corporations have power to prescribe reasonable penalties for neglect or refusal to discharge any duty imposed upon a citizen by ordinance. On this principle a charter provision is held valid which allows the holder of a special tax bill fifteen per cent per annum if payment be not made within six months after demand.

7. **Appeals from St. Louis Court of Appeals.** In a case in which an appeal lies from the St. Louis court of appeals only because con-

stitutional questions are involved, this court will consider those questions only.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*M. McKeag* and *P. Wm. Provenchere* for appellants.

*T. J. Cornelius* for respondent.

HENRY, J.—Plaintiff sued defendants in the circuit court of St. Louis, on nineteen special tax bills issued for the construction of a district sewer in Sidney street sewer district number 3, in the city of St. Louis

Section 22, article 6 of the charter, provides: " District sewers shall be established within the limits of districts to be prescribed by ordinance, as approved by the Board of Public Improvements, and so as to connect with a public sewer, or some natural course of drainage. Such district may be sub-divided, enlarged or changed, upon the recommendation of the board, by ordinance, at any time previous to the construction of the sewer therein. The assembly shall cause sewers to be constructed in any district whenever a majority of the property holders resident therein shall petition therefor, or whenever the Board of Public Improvements shall recommend it as necessary for sanitary or other purposes."

Ordinance number 10,717, as approved by the Board of Public Improvements, establishing Sidney street sewer district number 3, was passed by the assembly, and on the 3rd day of May, 1878, approved by the mayor. Ordinance number 10,720, recommended by the Board of Public Improvements, providing for the construction of the sewer in question, was passed by the assembly and approved on the 3rd day of May, 1878. The whole work of constructing the sewer and furnishing the necessary materials was let in one contract, and in advertising for the materials and work the quantity and quality of the articles necessary in its con-

struction were not specified, nor were the articles and work let to the lowest bidder. The sewer in question did not directly connect with a public sewer, but connected with a district sewer which had a direct connection with a public sewer.

Section 25, article 6 of the city charter, provides that " Said tax bill shall be and become a lien on the property charged therewith, and may be collected of the owner of the land, in the name of and by the contractor, as any other claim, in any court of competent jurisdiction, with interest at the rate of ten per cent per annum, after thirty days from demand of its payment; and if not paid within six months after such demand, then at the rate of fifteen per cent per annum from the date of said demand." It also provides that " such certified bill shall in all cases be *prima facie* evidence that the work and material charged in such bill shall have been furnished, and of the. execution of the work, and of the correctness of the rates or prices, amount thereof, and of the liability of the person therein named as the owner of the land charged with such bill to pay the same," with a proviso, that the party charged may by evidence contradict any fact of which the tax bill is declared *prima facie* evidence.

On the trial plaintiff, over defendant's objection, introduced the tax bill as evidence, it being admitted that the signatures of the city comptroller and president of the Board of Public Improvements were genuine. It was proved that plaintiff was the owner of the special tax bill sued on, and that demand of payment was made and refused March 15th, 1879.

Defendant offered in evidence ordinances numbers 10717 and 10,720, and ordinance 10,314, establishing the office of commissioner of supplies, and regulating the manner of purchasing all articles needed by the several departments of the city, and also testimony with regard to the recommendation made by the Board of Public Improvements, of

the passage of ordinance number 10,720, which will be noticed hereafter.

Plaintiff had judgment in the circuit court, which was affirmed by the court of appeals; and defendants have appealed to this court, and contend that section 25, article 2 of the city charter, is in conflict with section 53, article 4, and section 30, article 2 of the constitution of this State; that ordinance number 10,720 was a nullity, because introduced and passed before ordinance number 10,717 was enacted, and because, when the Board of Public Improvements recommended the construction of the sewer in question, the sewer district had not been established, and because said board did not recommend it as necessary for sanitary and other like purposes; that the sewer in question did not, nor did the ordinance require it to, connect with a public sewer, or some natural course of drainage, and the ordinance was, therefore, of no validity; that the whole work of constructing the sewer and furnishing the materials was let in one contract, when the work and different materials should have been separately advertised, and let to the lowest bidder. We shall notice these points in the order in which we have stated them.

First, as to the alleged conflict between section 25 of the charter and the constitution. Section 53, article 4 of 1. CONSTITUTIONAL the constitution, prohibits the general as-LAW: local laws changing rules of sembly from passing any local or special evidence: special law, "changing the rules of evidence in any judicial proceeding or inquiry before courts, justices of the peace, sheriffs, coroners, arbitrators or other tribunals,   *   *   ." There are 33 subdivisions of that section, and appellant's counsel have not indicated with which of those subdivisions section 25 of the charter conflicts, but I presume from their objection to the introduction of the tax bill as evidence, that they hold so much of that provision of the charter as makes the tax bill *prima facie* evidence to be in conflict with the subdivision above quoted. That is an inhibition, not against any change of

the rules of evidence, but against a change of the rules of evidence with respect to causes pending when the change is made. That is evidently the meaning of the language. The tax bill for sewerage work was made *prima facie* evidence by the ordinance of the city before the work in question was undertaken or the district established.

Nor is section 25 of the charter in conflict with section 30, article 2 of the constitution, which declares "that no person shall be deprived of life, liberty or property without due process of law." The substance of that provision has always been part of the organic law of this state, and city ordinances and acts of the general assembly providing for assessments for improvements, similar to the ordinance in question, have been upheld by repeated decisions of this court. In *Lockwood v. City of St. Louis*, 24 Mo. 21, Judge Leonard, who delivered the opinion of the court, said : "These special assessments are found in the English law, and have prevailed, it is believed, in most if not all of our American states, and their validity, when assessed as in this instance, cannot be questioned under our constitution." *Sheehan v. Good Samaritan Hospital*, 50 Mo. 155; *Neenan v. Smith*, 50 Mo. 525; *Adams v. Lindell*, 72 Mo. 198.

2. ——: local assessment: due process.

The position is equally unsound, that ordinance number 10,720 is a nullity, because introduced before ordinance 10,717 took effect. While it is true that section 22, article 6 of the charter does not authorize the construction of sewers, except in established districts, yet, if when an ordinance authorizing the construction of a sewer takes effect, the district in which it is to be constructed is in existence, although the ordinance establishing the district and that authorizing the construction of the sewer take effect at the same moment, we do not see that the provision of the charter is violated. The assembly can authorize the construction of sewers in sewer districts, only when a majority of the property holders therein petition for it, or when the Board of Public Im-

3. SEWER ORDINANCES IN ST. LOUIS

provements shall recommend it as necessary for sanitary or other purposes; nor can the assembly establish a sewer district except by ordinance as approved by the Board of Public Improvements; and when that board approves such an ordinance, we see nothing in the charter provision requiring the board to wait until the passage of that ordinance, before it shall recommend the construction of a sewer for the district. It is to be presumed that the board will not approve an ordinance to' establish a district until the necessity for it is apparent, and when that is so it must be equally apparent that there is a present necessity for the construction of the sewer. If the board must wait until the ordinance establishing the district takes effect before it can recommend an ordinance for the construction of the sewer, the delay might result in serious consequences to the entire neighborhood. The importance of good and sufficient sewerage to the comfort and health of the inhabitants of the city forbids the narrow construction of the charter provision, which would occasion such delay in the construction of necessary sewers as might seriously impair the health of the localities in which they are needed.

Nor do we think the ordinance for the construction of the sewer void because the board in its recommendation did not state expressly that it was necessary for sanitary purposes or for what purpose. Before the ordinance was introduced, Mr. Flad, president of the board, by its direction, in a written communication to the municipal assembly represented that, in accordance with the provisions of the charter the ordinance in question prepared by said board was transmitted to the assembly with the recommendation of the board that the sewer be constructed. It was not stated in express terms that the sewer was necessary for sanitary purposes, but, if recommended in accordance with the provisions of the charter, the board must have considered, before recommending the improvement, that it was necessary for some purpose contemplated by the charter provision, deemed by the board sufficient.

The construction placed by appellants' counsel upon the language of the charter "for sanitary or other purposes," is too narrow. Their contention is, that "other purposes," in that connection means "other like purposes pertaining to the health, or designed to secure the health of the city's inhabitants." The word "sanitary" embraces everything pertaining to the health of the inhabitants, and, if the words "other purposes" have no other meaning, they are superfluous. They have a broader significance, however, and there may be other purposes besides sanitary purposes, which may make the construction of a sewer necessary. And this is a matter for the consideration of the Board of Public Improvements and the municipal assembly.

It is further objected to ordinance number 10,720, that it did not provide that the sewer in question should connect 5. ——: district with any public sewer or any natural course sewers. of drainage, but authorized a connection with another district sewer. The sewer with which it did connect had been constructed under an ordinance of the city and connected directly with a public sewer, and it was established by the evidence that its dimensions were two and a half by three and a half feet, and that it had sufficient capacity "to drain all area that ever can be drained into it." The charter provision does not require a direct connection between a district sewer and a public sewer, but only that it shall "connect with a public sewer or some natural course of drainage." It might be questioned whether the assembly can authorize the construction of a district sewer of greater capacity than necessary to drain the district in which it is constructed, at the expense of the property holders. They might object and resist the payment of the extra cost of such a sewer, or by timely proceeding, restrain the municipal authorities from its construction, but having been completed with capacity to drain an adjacent district, the property holders in the latter have

no ground to object to the connection of their sewer with it. The city has no right to burden one sewer district with the expense of constructing a sewer larger, and necessarily more costly, than necessary to drain the district in which it is constructed. This is probably what prompted the insertion of the requirement in the section, that the district sewer should connect with the public sewer. But it cannot be that the assembly is not authorized, when it finds a district sewer already constructed with sufficient capacity to drain an adjacent district also, to connect the sewer in the latter district with the public sewer, through the sewer in the adjacent district.

The provision of the charter allowing the holder of the tax bill fifteen per cent per annum, if payment of the **6. MUNICIPAL COR-** tax bill be not made within six months **PORATIONS : power** **to impose penalties:** after payment is demanded and refused is **special tax bill.** of the nature of a penalty. It is not interest. Interest at ten per cent per annum had been previously provided for, and although the fifteen per cent allowed by the ordinance in a certain contingency, is denominated "interest," it is in reality a penalty to secure prompt payment, imposed for neglect of duty; and municipal corporations have the power to prescribe reasonable penalties for the neglect or refusal to discharge any duty imposed upon a citizen by a valid ordinance. *Town of Tipton v. Norman*, 72 Mo. 380.

With respect to the mode of letting the contract, whether in accordance with or in violation of the ordinance **7. APPEALS FROM ST.** establishing the office of commissioner of **LOUIS COURT OF APPEALS.** supplies and regulating the manner of purchasing articles needed by the several departments of the city, no constitutional question is involved, but only the construction of an ordinance of the city, and inasmuch as if no other question were involved in the cause, defendant could not have had an appeal from the judgment to this court, we cannot consider that question on this appeal.

Having disposed of all the questions in the cause upon which defendant's right of appeal was based, all concurring, the judgment is affirmed.