# SEABOARD NATIONAL BANK OF NEW YORK v. WOESTEN, Appellant.

### In Banc, June 15, 1903.

1. **Streets**: CONSTRUCTION AND MAINTENANCE: CONTRACT. It is lawful for the board of public works of St. Louis to advertise for and let together, in one contract and to the same contractor, a contract for the reconstruction of a street and its maintenance for a period of years.

2. ———: ———: PENALTY OF FIFTEEN PER CENT: INTEREST: SPECIAL LAW: CONSTITUTIONAL. The provision of the St. Louis charter which allows for the improvement of a street a recovery of fifteen per cent interest per annum if the taxbill is not paid within six months after demand, is constitutional and valid. Such provision is not in violation of the Constitution which prohibits the General Assembly to pass any local or special law "fixing the rate of interest," for in no sense is that fifteen per cent "interest," although inaptly so denominated in the charter; but it is in reality a penalty to secure prompt payment, imposed for the neglect of duty.

3. ———: ———: ———: NATURE OF WORK AND PENALTY. Formerly every man was subject to the duty of working so many days every year upon the public roads, and penalties were prescribed for those who failed to respond to an order to do such work. Then as the natural and inevitable development of the system of improving roads in thickly populated communities, the public (or city) was given the authority to have the work done and to charge the cost thereof to the owners of the abutting property specially benefited by the improvement; and to insure the prompt payment of that cost a penalty for delay in payment was imposed. The principle for imposing the penalty is the same in each case: In the former it was a penalty for not working in person; in the latter, it is a penalty for not paying for the work done by another.

4. ———: ———: ———: POWER. The same power that gives the State the authority to impose a penalty of one per cent per month for failure to pay general taxes gives the city of St. Louis the right under its charter to impose a penalty of fifteen per cent per annum after demand for failure to pay a special assessment of benefits, although a benefit assessment is not a tax.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney*, Judge.

AFFIRMED.

*Judson & Green* for appellant.

(1)    It was unlawful for the Board of Public improvements to advertise and let together in one contract, and to the same contractor, the contract for reconstruction, and also that for repairs and maintenance of the street for the next nine years, after the board had first fixed an arbitrary limit of fifty cents per square for such repairs for the next nine years as the maximum bid which the board would accept, the inevitable result of such a method of letting being to greatly increase the bids for the work of reconstruction and to compel the abutting property-owner to pay for a portion of the repairs. Verdin v. St. Louis, 131 Mo. 26; Boyd v. Milwaukee, 3 Eng. & Am. Corp. Cases 652; McAllister v. Tacoma, 37 Pa. 447. (2) But conceding, for the argument, that plaintiff is entitled to a judgment for the face of the taxbill sued upon, the trial court erred in allowing it to recover interest thereon at fifteen per cent per annum, because that clause of the charter which permits the recovery of interest at fifteen per cent per annum on such taxbills is unconstitutional and void. (a) It is unconstitutional because it is in direct conflict with that clause of section 53 of article 4 of the State constitution, which provides that no local or special law "fixing the rate of interest" shall ever be passed. The fifteen per cent per annum is not imposed upon the property-owner as a penalty for his failure to discharge a public duty by paying a tax levied by the State or one of its subdivisions, because: First. It is not referred to in the charter as a penalty, but it is expressly termed an interest charge. Charter of St. Louis, art. 6, sec. 25. Second. An assessment for street improvements is not in any sense a "tax," and therefore the fifteen per cent mentioned in the charter as interest can not be construed to be a penalty for failure to pay a "tax," and upheld on that ground. Morrison v. Morey, 146 Mo. 543; Kansas City v. Bacon, 147 Mo. 259. (b) It is

also unconstitutional, because it directly conflicts with and violates another provision of said section 53 of article 4 of the State Constitution, which is that "where a general law can be made applicable, no local or special law shall be enacted." This provision of the city charter for fifteen per cent interest is not extended to all special taxbills; it does not apply to those taxbills issued to the city for costs and expenses incurred by it in opening and improving streets, or for abating nuisances, which costs and expenses are chargeable against the abutting owner; it applies only to those taxbills issued to private contractors, and it is, therefore, unconstitutional and void. Charter of St. Louis, art. 6, sec. 25; Revised Ordinances of St. Louis 1901, secs. 656, 878 and 907; State v. Hill, 147 Mo. 63; Henderson v. Koenig, 168 Mo. 356; Dunne v. Railroad, 131 Mo. 5; Edmunds v. Herbrandson, 14 L. R. A. 729. (c) If this provision of the charter is construed as a penalty clause for failure to pay a "tax," then it also violates section 3, article 10 of the State Constitution, which provides that all taxes shall be uniform and shall be collected by general laws, because this penalty does not apply to the taxbills issued by the city of St. Louis in favor of itself for street improvement. Aurora v. McGannon, 138 Mo. 28; Kansas City v. Grush, 151 Mo. 128. (3) Although this court has frequently held that the charter of St. Louis provides for and allows the recovery of interest on such taxbills at fifteen per cent per annum, yet the constitutionality of this charter provision has never been passed upon by this court; it is, therefore, still an open question. Buchan v. Broadwell, 88 Mo. 37; Eyerman v. Blaksley, 78 Mo. 152; Barber Asphalt Paving Co. v. Ullman, 137 Mo. 570.

*Boyle, Priest & Lehmann* and *Geo. W. Easley* for respondent.

(1) The first point made for appellant has been expressly ruled against him. Bank v. Woesten, 147 Mo.

467; Barber Asphalt Paving Co. v. Hezel, 155 Mo. 391.; Barber Asphalt Paving Co. v. French, 158 Mo. 534. In the language of Judge GANTT, one of the dissenting judges, in Bank v. Woesten, "The question must be considered settled by the majority opinion in those cases." Barber Asphalt Paving Co. v. French, 158 Mo. 556. (2) The penalty of fifteen per cent per annum, by way of interest for delay, is expressly authorized by the city charter, and there was no error in permitting a recovery therefor. Asphalt Paving Co. v. Ullman, 137 Mo. 570. The charter provision of the city of St. Louis, "in prescribing the rate of interest which special tax-bills shall bear, prescribes the rate, not as interest, but as a penalty for failure to comply with the law; and this the freeholders had power to do under the Constitution, as the Legislature had done before." Eyerman v. Blaksley, 9 Mo. App. 234. While it is denominated "interest," "it is in reality a penalty to secure prompt payment imposed for neglect of duty." Such penalties are within the powers of municipal corporations. Eyerman v. Blaksley, 78 Mo. 152. Such penalties are generally upheld. Cooley on Tax., 309.

MARSHALL, J.—For the purposes of this appeal, the full and accurate statement of the case made by counsel for the appellant is adopted. It is as follows:

"This is a suit upon a special taxbill issued by the city of St. Louis for the reconstruction of Grand avenue from St. Louis avenue to Montgomery street. Plaintiff sues as the assignee of the Barber Asphalt Paving Company, the original contractor to whom the taxbill was issued.

"In its petition plaintiff sets out the ordinances and the contract under which the alleged work was done; alleges compliance by the contractor with all the terms of said contract and ordinances; that defendant Frederick Woesten was the owner of certain property abutting upon said reconstructed street, and that the tax-

bill, which was filed with its petition, had been regularly issued.

"This cause was tried upon the petition and an amended answer filed by defendant Woesten since the former appeal of the case, which is reported in 147 Mo. 467, which amended answer is: first, a general denial; second, a cross-bill to plaintiff's petition, alleging that the ordinances of the city of St. Louis, under which the alleged work was done, the contract for said work and the special taxbill issued therefor were all of them null and void, for the following reasons:

"1.    That said ordinance provides for the repair and maintenance of Grand avenue for a period of nine years, commencing one year after the work of reconstruction shall be completed, and said ordinance does not specify the materials to be used in such work of repair and maintenance, and was not indorsed with an estimate of the cost of such repair and maintenance as required by the city charter, and that said ordinance does not contain a specific appropriation for the cost of said repair and maintenance from the proper revenue fund of the city of St. Louis, as required by the city charter.

"2.    That said ordinance provides for the payment of public money for the public work of repair and maintenance of part of said Grand avenue for nine years, but that the comptroller of the city never indorsed said ordinance, to the effect that sufficient unappropriated means stood to the credit of the fund set aside for street repairs to meet the requirements of said ordinance.

"3.    That the said ordinance requires that the work of reconstruction of said street, and the repair and maintenance thereof for nine years should be advertised, bid for, let and contracted for, in one and the same bidding, letting and contract and to and by the same contractor, and that it was unlawful to so confuse and combine the cost of reconstruction and the cost of repairs to said street.

"4.    That in recommending ordinance No. 16943, set out in plaintiff's petition, the Board of Public Improvements of the city of St. Louis were acting under section 562 of the Revised Ordinances of 1887, and section 564 of the Revised Ordinances of 1893, and that said ordinances are null and void, because they are repugnant to sections 14, 15, 17, 18, 24, 27 and 28 of the charter of the city of St. Louis.

"5.    That the Board of Public Improvements did arbitrarily fix the price and rate for said work of repair and maintenance, and did withdraw said work of repair and maintenance from public bidding, by adopting a uniform rule to the effect that no bid for the public work of reconstruction, repair and maintenance should be accepted by them in which the bid for repair and maintenance to be paid by the city should exceed fifty cents per square of one hundred feet per annum.

"6.    That said price of fifty cents per square per annum, adopted by said board, for said work of maintenance and repair, was inadequate and insufficient to cover the cost thereof during the whole of said period, and that, by arbitrarily fixing the price of said maintenance and repair at said sum, said board invited and permitted plaintiff to bid an exorbitant price for the work of reconstruction, in order to make up what plaintiff would lose on said repairs and maintenance, and that the price bid by plaintiff for the work of reconstructing said street was, and is, exorbitant and unreasonable, and plaintiff is, by said rule and method of letting contracts, compelled to pay a portion of the cost of the repair and maintenance of said street.

"7 and 8.    That, at the time of letting of said contract, the Board of Public Improvements well knew that the contractor, the Barber Asphalt Paving Company, owned and possessed the exclusive right to produce and use the materials specified therein, and that by selecting said monopolized materials the cost of said construction

was greatly increased, and said contract was not let by competitive bidding, as required by the charter.

"9 to 13. That the provisions of the charter and ordinances of the city of St. Louis in reference to special taxbills for work of the character done by plaintiff's assignor were, and are, unconstitutional and unreasonable, and, in effect, provide for taking defendant's property without due process of law, and that they are, therefore, null and void. And defendant alleges that said taxbill was, and is, a cloud upon his title to the real estate described in the petition, and he prays the court to declare said taxbill to be null and void, and of no effect.

"Plaintiff, for reply to this amended answer, denied each and every allegation therein contained.

"For plaintiff, the cause was submitted upon the pleadings, the taxbill, which was admitted to have been assigned to plaintiff and to have been regularly issued, and upon the admission of defendant that he knew that the work of reconstruction was being done in front of his property and made no objection thereto at the time, and that the work so done has ministered to the benefit of defendant's property, and that payment of the taxbill sued upon was demanded September 23, 1893.

"Defendant offered in evidence ordinance 16943, as set out in plaintiff's petition, and in behalf of defendant, it was admitted as follows: That at the time of the recommendation of said ordinance by the Board of Public Improvements of the city of St. Louis, and at the time of its transmission to and reception by the Municipal Assembly of the city of St. Louis, and during its pendency in said Municipal Assembly, prior to its final adoption and approval, said ordinance was not indorsed with the board's estimate, or any estimate of the cost of maintenance or repair of the street for nine years, provided for therein. The said Board of Public Improvements never did, from the time of recommending and transmitting said ordinance to the Municipal

Assembly, nor during its pendency in said Municipal Assembly, nor at any time whatever, prepare and submit to said Municipal Assembly of the city of St. Louis any estimate of the cost of the work of maintenance or repair of the street for nine years, proposed and provided for in said ordinance; and said ordinance did not and does not contain a specific appropriation for the cost of said maintenance or repair based upon an estimate of such, indorsed by the president of said Board of Public Improvements on said ordinance, for the whole cost of the repair and maintenance of that portion of Grand avenue embraced in said ordinance.

"2.   In the Municipal Assembly the said ordinance No. 16943, was, on its second reading, referred to the appropriate committee, but the said committee failed to obtain, and there was not placed on said ordinance at any time the indorsement of the comptroller of the city of St. Louis, to the effect that sufficient appropriated means stood to the credit of the fund set aside for street repairs—reconstructed streets—to meet the requirements of said ordinance, and particularly the requirement thereof as to the payment of the cost of maintenance and repair of said street provided for in said ordinance, either for one year or nine years. While this is true, there were moneys in the city treasury at the time standing to the credit of the fund known as 'Street Repairs—Reconstructed Streets,' out of which the maintenance could be paid annually, and was paid every six months, commencing eighteen months after the completion of the work of reconstruction. This fund, 'Street Repairs—Reconstructed Streets,' is one provided every year by the annual appropriation bill, known as the general appropriation bill, and is provided upon a recommendation and general estimate by the street commissioner, in view of the contracts outstanding, and the requirements of his department.

"3.   The work of reconstruction and the maintenance of said street for nine years, beginning at the end

of the first year after reconstruction, were advertised and bid for, and were let and contracted for together, as shown by the advertisement, bidding and letting No. 3884, and the record of the Board of Public Improvements, at the same time, by the same contract, and each secured by a separate bond, and were, as a matter of fact, let to and contracted for to be done by the same contractor.

"Defendant then offered in evidence said advertisement, said bidding and letting and said contract under which said work was done, with its maintenance and repair clauses.

"Defendant also offered in evidence section 542, Revised Ordinances 1887, and section 564, Revised Ordinances 1892, which were admitted by plaintiff to have been in force when said contract was let.

"It was also admitted by plaintiff that defendant had paid all taxes of the city and state assessed against the property in question.

"Defendant then offered the following declarations of law, all of which the court refused, to-wit:

"1. The court declares the law to be that, under the pleadings and evidence, plaintiff is not entitled to recover, or to have the taxbill sued upon declared a lien on defendant's property.

"2. The court declares the law to be that, under the pleadings and the evidence, the taxbill herein sued upon is null and void, because the ordinances of the city of St. Louis, under which the contract for this street improvement was let, violate the provisions of the charter of the city by imposing upon the abutting property-owners the cost and burden of repairing and maintaining said street for a period of nine years after the completion of said work thereon.

"3. The court declares the law to be that, under the pleadings and the evidence, the taxbill herein sued upon is null and void, because the contract in evidence under which the work was done imposes upon the abut-

ting property-owners the cost and burden of repairing and maintaining said street for a period of nine years after the completion of said work thereon.

"4.    The court declares the law to be that, even if the taxbill sued upon herein is valid, and if plaintiff is entitled to recover upon the same, then the amount due plaintiff thereon is limited to the amount specified on the face of said taxbill, with interest on said sum at six per cent per annum from the date on which payment thereof was demanded from defendant, because the provisions of the charter and ordinances of the city of St. Louis for the recovery of interest on all such bills at the rate of fifteen per cent per annum are unconstitutional, unreasonable and void.

"Thereupon the court found for plaintiff, and rendered a special judgment against defendant for the sum of $2,503.35, decreeing the same to be a lien upon the defendant's land described in plaintiff's petition, and directing a sale thereof to satisfy said judgment and costs, from which judgment defendant has appealed, after the overruling of his motion for a new trial.    Defendant Frederick Woesten has died since the appeal herein, and the cause has been revived against his executor and heirs at law."

Upon this state of the record, counsel assign two errors, which are as follows:

1.    That it was unlawful for the Board of Public Improvements to advertise and let together, in one contract and to the same contractor, the contract for reconstruction and also for maintenance for nine years.

2.    That the penalty of fifteen per cent per annum is unconstitutional because in conflict with section 53, article 4, of the Constitution of Missouri, which provides that no local or special law fixing the rate of interest shall be passed, and because in conflict with section 53, article 4, of the Constitution of Missouri, being special legislation.

## I.

The first error assigned is that the contract for the work required the contractor to maintain it for nine years.

This identical objection was urged when the case was here on former appeal, and was held to be untenable. It was then said: "There would seem to be no doubt that under these general powers the municipality would have the same right, in order to secure good and durable work, to require of the contractor any guaranties that a private person might take in order to secure the perfection of work done for him. Municipal officers who in contracting for such public work, should neglect to take from a contractor some kind of guaranty of the perfection of the work and materials, would be derelict in their duty and unfitted for the trust with which they had been invested. The kind of guaranty should be left to their discretion and business sense. We think no wiser or more adequate provision for securing perfection in the completed work could be devised than that of requiring the contractor to maintain it for a reasonable time at such cost as would compensate for the repairs necessary to preserve good work and good material from becoming imperfect from natural and unavoidable causes."

This was the law of the case upon a trial anew in the lower court. [May v. Crawford, 150 Mo. 504.]

Since the former decision in this case, the same question has again come before the court, and the rule announced on former appeal hereof has been reaffirmed. [Barber Asphalt Paving Co. v. Hezel, 155 Mo. 391; Barber Asphalt Paving Co. v. French, 158 Mo. l. c. 556.] In the case last cited, GANTT, C. J., in disposing of the same contention referred to the decision in this case on former appeal (147 Mo. 467), and to the case of Barber Asphalt Co. v. Ullman, 137 Mo. 543, and said: "The question must be considered settled by the ma-

jority opinions in those cases." It is only necessary to repeat that statement here.

## II.

The second error assigned is that the provision of section 25 of article 6 of the St. Louis charter which allows a recovery of fifteen per cent interest per annum if the taxbill is not paid within six months after demand, is unconstitutional, in that it violates section 53 of article 4 of the Constitution, which prohibits the General Assembly to pass any local or special law "fixing the rate of interest," and also to pass any local or special law where a general law can be made applicable.

The St. Louis charter inaptly calls the evidence of the assessment of benefits a "taxbill" and is equally inaccurate in calling the fifteen per cent "interest." The confusion arising from the use of the term "taxbill" caused much litigation, but that was finally settled when it was held that such assessments of benefits are in no true sense a tax. So, too, the misapprehension as to the character and nature of the fifteen per cent gave rise to litigation, until that question was set at rest by the decisions of this court in Town of Tipton v. Norman, 72 Mo. 380, and Eyerman v. Blaksley, 78 Mo. 145.

In the first case cited, it was said: "The power to require all able-bodied male inhabitants to work the streets in such manner as by ordinance the council might prescribe, implies the power of enforcing that ordinance by the imposition of penalties for a failure to discharge the duty imposed. An ordinance would be a dead letter, if the corporation were left without the power to enforce its observance."

In the Eyerman case, it was said: "The provision of the charter allowing the holder of the taxbill fifteen per cent per annum, if payment of the taxbill be not made within six months after payment is demanded and refused, is of the nature of a penalty. It is not interest. Interest at ten per cent per annum had been previously

provided for, and although the fifteen per cent allowed by the ordinance in a certain contingency, is denominated 'interest,' it is in reality a penalty to secure prompt payment, interposed for neglect of duty; and municipal corporations have the power to prescribe reasonable penalties for the neglect or refusal to discharge any duty imposed upon a citizen by a valid ordinance. [Town of Tipton v. Norman, 72 Mo. 380].''

These two cases illustrate the evolution of the law with respect to street improvements. At first, every man was subject to the duty of working so many days every year upon the public roads, and penalties were prescribed for those who failed to respond to an order to do such public work. Then, as a natural and inevitable development of the system of improving roads, the public was given authority to have the work done and charge the cost thereof to the owners of the abutting property that was specially benefited by the improvement. And to insure the prompt payment of such assessment, a penalty for delay in payment was imposed. In both cases, the penalty is imposed for a failure to discharge a public duty. In the former instance, it was a penalty for not working in person, and in the latter instance, it is a penalty for not paying for the work done by another. The principle is the same, and therefore the power to impose a penalty is the same.

Having thus reached the conclusion that the fifteen per cent is a penalty and not interest, the constitutional contentions drop out of the case, for they depend upon the existence of the first postulate that it is interest. If it is not interest but a penalty, the prohibition of section 53 of article 4 of the Constitution against the power of the General Assembly to pass any local or special law ''fixing the rate of interest'' has no application. And the same is true as to the prohibition against the passage of a local or special law, where a general law could be made applicable.

The laws of this State (sec. 9225, R. S. 1899) prescribe that if any one fails to pay his general taxes before the end of the year, "an additional tax, as penalty, of one per cent per month" shall be added. The section then says that "said additional tax or penalty" shall apply to a fraction of a month, and then adds: "Provided, however, that said interest shall not be chargeable against persons who are absent from their homes," etc.

It will be observed that the one per cent a month, is first called "an additional tax as penalty" and then it is called "said additional tax or penalty," and finally it is called "said interest," thus showing the looseness of expression that may be employed in the same section of the statute when referring to the same matter. But the term employed does not change the character of the imposition. It is not an "additional tax" at all, for regarded as a tax it would or possibly might be illegal, because the full amount of taxes that the Constitution permitted had already been levied. It is not "interest" in any proper sense, because it is a penalty imposed for a failure to discharge a duty that can be lawfully demanded.

The same power that gives the State a right to impose a penalty of one per cent a month for failure to pay general taxes, gives the city of St. Louis the right under its charter to impose a penalty of one and a quarter per cent a month for failure to pay a special assessment of benefits.

As, therefore, the imposition is a penalty and not interest, the foundation upon which the constitutional questions rested is wiped out, and that leaves this case in the same condition as the case of Eyerman v. Blaksley, 78 Mo. 145, wherein the same penalty under the same charter provision, was adjudged to be valid. No good reason appears for doubting the correctness of the rule there laid down, and therefore the judgment of the circuit court in this case is affirmed. All concur.