# CITY OF BOONVILLE ex rel. JOHN COSGROVE v. W. SPEED STEPHENS et al., Appellants.

## Division Two, December 19, 1911.

1. **CITIES: Street Improvements: Statute: Costs.** Proceedings to charge abutting property with the cost of street improvements are *in invitum*, and substantial compliance with the statute must be shown in order to bind the property.

2. ————: ————: **Specifications: Contract: Variance.** Specifications for paving a city street when drawn provided that both the first and second layers of brick should be rolled with the "city roller." The city had at that time but one roller, a heavy one. Before the specifications were adopted the city engineer bought a smaller roller and notified the mayor and members of the city council individually of this fact. The specifications as drawn were adopted by the council before a resolution was passed authorizing the purchase of the new roller. The trial court found that all bidders were notified that the smaller roller must be used on the first layer of brick. Finally, the contract with the successful bidder provided that the first layer of brick should be rolled with a roller "designated by the city engineer and furnished by the city." *Held*, under these circumstances, that the city's contract with the successful bidder is valid.

3. ————: ————: **Ordinances: Specifications: Construction.** Laws, ordinances and contracts are to be so construed as to uphold their validity when their language will permit. The same rule applies to the construction of the specifications for street paving which are adopted by a city council and included in the city's contract with the successful bidder for the work.

4. ————: ————: **Special Taxbills: Part Payment in Cash.** The fact that the city paid in cash a part of the cost of street improvements when the ordinance provided that the contractor should accept special taxbills for the entire cost, does not invalidate taxbills issued to pay the remaining cost.

5. ————: ————: ————: **Engineer's Estimate.** An estimate by a city engineer reading: "In compliance with my duty as city engineer I have computed the cost of paving Fifth street . . . and I find that the work should be done at a cost not to exceed $1.47 per square yard," is not vague and uncertain, but is *held* to be sufficient for its purpose.

6. ————: ————: ————: **City Engineer: Ordinance.** It is *held*, in this suit upon a taxbill, that the fact that no ordinance is shown in evidence creating the office of city engineer, when

the acting engineer has been for eight or ten years recognized as city engineer by the city government and those dealing with it, does not invalidate taxbills issued to pay for street paving—estimates, specifications, etc., having been supplied by the acting engineer.

7. ———: ———: ———: Interest: Contract. The ordinance under which proposals for certain street improvements were asked declared that the taxbills should be issued in accordance with the city ordinances. A general ordinance then in force provided for interest upon such special taxbills thirty days after issue and presentation. The special ordinance passed after the work was completed required no demand or presentation of the bills in order to start interest. This last mentioned ordinance gave the contractor no advantage over other bidders.

8. ———: Ordinances: Presumption: Residents' Knowledge. The law presumes that the residents of a city are aware of the provisions of its ordinances.

9. ———: Taxbill: Interest. Where the ordinance authorizing the issue of the original special taxbill set the interest thereon at 8 per cent after thirty days from date of issue, interest upon an amended taxbill must be reckoned as of the original.

10. JUDGMENT: Interest: Taxbill. A judgment upon a special taxbill for street improvements bears interest at 6 per cent after rendition, even though the taxbill bears interest at 8 per cent (Sec. 3707, R. S. 1899).

Appeal from Cooper Circuit Court.—*Hon. Samuel Davis*, Special Judge.

AFFIRMED (*as modified*).

*W. M. Williams* for appellants.

(1) Proceedings to charge the abutting property with the cost of street improvements are *in invitum*. Substantial compliance with the statute is essential to bind the property. All who deal with these matters must see that there is no substantial departure from legal requirements. Rose v. Trestrail, 62 Mo. App. 352; Carroll v. City of St. Louis, 4 Mo. App. 192; West v. Porter, 89 Mo. App. 153. (2) "Where the municipal authorities are required to advertise for bids and let a contract to the lowest bidder, they are not at lib-

erty to award a contract different from that adver-
tised. 20 Ency. of Law (2 Ed.), 1169; 1 Smith on Mu-
nicipal Corporations, sec. 746, p. 750; Le Tourneau v.
Hugo, 97 N. W. (Minn.) 115; Galbreath v. Newton, 30
Mo. App. 380; McQuiddy v. Brannock, 70 Mo. App.
549; Clapton v. Taylor, 49 Mo. App. 117; City of Tren-
ton v. Collier, 68 Mo. App. 491; Kansas City v. Askew,
105 Mo. App. 84; Wickwire v. City of Elkhart, 43 N.
E. (Ind.) 216; Inge v. Board of Public Works, Mobile,
33 So. (Ala.) 681; Warren v. Mayor of Boston, 62 N.
E. (Mass.) 953. (3) Any material departure
in the contract awarded, from the terms and con-
ditions upon which the bidding is had, renders the
contract, in a sense, a private one. Inge v. Board
of Public Works, Mobile, 33 So. (Ala.) 682;
Chippewa Bridge Co. v. City of Durand, 99 N.
W. (Wis.) 608. (4) The law does not contemplate
verbal changes in specifications for public work, and
if permitted there can be no certainty of fair compe-
tition in the letting of public contracts. Spaulding
v. Forsee, 109 Mo. App. 676; Manufacturing Co. v.
Hamilton, 51 Mo. App. 125; Bridge Co. v. City of Du-
rand, 99 N. W. (Wis.) 608. (5) The statute required
written specifications to be on file with the city clerk
at the time bids were called for, and these specifica-
tions should be sufficiently clear to enable the bidder
to act upon them. Dickey v. Holmes, 109 Mo. App. 724;
Elliott on Roads and Streets (2 Ed.), p. 620, sec. 594.
(6) The ordinance, calling for bids, provided that the
contractor should accept taxbills against the abutting
property for the entire cost of the work. After the
paving was completed and accepted, the city paid about
twenty-five per cent of the total cost in cash. It was
further declared in the ordinance under which pro-
posals were asked that the taxbills should be issued
under and in accordance with the charter and ordi-
nances of the city. A general ordinance was then in

force providing for interest upon such special tax-bills thirty days after the date of their issue and presentation. The ordinance adopted after the work was completed directed that the taxbills sued on should bear interest thirty days from their date without a reference to a demand. No other bidder had the opportunity to compete for the work on these terms. (7) (a) No ordinance establishing the office of city engineer in the city of Boonville was introduced in evidence. The statute does not create any such office. There is nothing in the record to show that the office of city engineer exists under the ordinances of Boonville. There can be no *de facto* officer in the absence of a statute or ordinance creating the office. The paper purporting to be an estimate was signed as "city engineer" by a person who had no regular term and was only paid by the day for his services. Weesner v. Bank, 106 Mo. App. 668. (b) The so-called estimate does not state the probable cost of the work. It simply says that it should be done at a price "not to exceed" a certain amount per square yard. This is not such an estimate as is required by the statute and is insufficient to serve the purpose intended thereby. City of Boonville v. Rogers, 125 Mo. App. 149; R. S. 1899, sec. 5858, par. 8; Kansas v. Argentine, 47 Pac. 542. (8) The court, in the judgment rendered, erroneously awarded plaintiff interest from thirty days after the date of the issue of the original taxbill. Assuming that all the proceedings were valid, interest cannot be collected under the ordinance until after the issue of the amended taxbill. St. Joseph v. Forsee, 110 Mo. App. 242; City of St. Louis v. Allen, 53 Mo. 57; Paving Co. v. Peck, 186 Mo. 520. (9) The judgment bears only six per cent interest in any event. Section 3707, Revised Statutes 1899, provides that judgments upon contracts shall bear the same rate as the contract, but other judgments bear six per cent. Robinson v. Col-

vin, 5 Mo. App. 588; St. Louis v. Allen, 53 Mo. 44; Attorney-General v. Tel. Co., 141 U. S. 35, Bank v. Woesten, 176 Mo. 49.

*Montgomery & Montgomery, James W. Cosgrove* and *John Cosgrove* for respondent.

(1) The term "city roller," as used in the specifications, received a timely consideration and construction by the city council, the city engineer and all contractors, as meaning the seven-ton roller for the vitrified or top course of brick, and the lighter roller for the local or bottom course of brick; and all bids for the work were based on such understanding and construction. This was well understood by all bidders and parol evidence was admissible to show it. Swift v. St. Louis, 180 Mo. 96; Cole v. Skrainka, 105 Mo. 311; City ex rel. v. Knott, 49 Mo. App. 618; Sedalia ex rel. v. Smith, 206 Mo. 363. (a) "If the facts regarding such an ordinance, are capable of two different constructions, that which will support the ordinance, will be preferred to the one which will defeat it." Hamilton's Law of Special Assessments, sec. 386, p. 337. (b) A substantial compliance of the contract with the ordinance is sufficient; literal compliance is not necessary. 1 Page & Jones, Taxation by Assessment, p. 792, sec. 511; Heman Construction Co. v. Loevy, 179 Mo. 464; Dunn v. McNeeley, 75 Mo. App. 217; Eyerman v. Provenchere, 15 Mo. App. 267; Hurd v. Rackliffe, 192 Mo. 330. (c) The use of the lighter roller on the bottom course of brick, was found by the trial court, as a matter of fact, to have been of benefit to the property owners; that no prejudice resulted therefrom; that no competition was restricted thereby. Allen v. Labsap, 188 Mo. 702. (d) The designation of the roller to be used, was merely directory, as found by the trial court. (e) Appellant's counsel has cited numerous cases upholding the necessity of competitive

bidding. These cases, without exception, are cases in which the several bidders were denied the opportunity of bidding on the same basis. The case at bar is radically different in that there was fair competitive bidding on the same basis to all. (2.) Substantial compliance with the statute in reference to the engineer's estimate is all that is required. Lamphere v. Chicago, 72 N. E. 426; Hyman v. Chicago, 59 N. E. 10; McChensey v. Chicago, 38 N. E. 768; Chicago U. T. Co. v. Chicago, 74 N. E. 450; Zeigler v. Chicago, 72 N. E. 720; Hamilton's Law of Special Assessments, sec. 464, p. 432; City ex rel. v. Farrell, 106 Mo. 437. Also the sufficiency of the estimate will be presumed. 2 Page & Jones, Taxation by Assessment, sec. 818, p. 1395; Sedalia ex rel. v. Smith, 206 Mo. 363; City ex rel. v. Briggs, 58 Mo. App. 245. (3) Under the pleadings, appellants cannot now urge the following points, as no proper foundation was laid therefor in the answer: That the office of city engineer had not been created by ordinance; that Samuel W. Ravenel was not city engineer; that the engineer's estimate of the cost of the improvement was sufficient. The pertinent portion of the answer is as follows: "Defendant further avers that no estimate of the cost of the work of paving Fifth street between the points aforesaid and for which said taxbills were issued was made by the city engineer or any other officer of the city before said council made the above mentioned contract with said Hogan for paving said street. Huling v. Store Co., 27 Mo. App. 359; Snyder v. Free, 114 Mo. 367; Jaicks v. Merrill, 201 Mo. 109. The answer merely puts in issue the timeliness of the estimate. (4) With reference to *de facto* officers: Akers v. Kolkmeyer, 97 Mo. App. 528. (5) Estoppel. Jaicks v. Merrill, 201 Mo. 109.

ROY, C.—This is a suit upon an amended taxbill, dated November 14, 1904, issued by the city of Boonville to Thomas Hogan, and by him assigned to the

relator. There was judgment for the plaintiff in the trial court, which, on appeal to the Kansas City Court of Appeals, was reversed in an opinion reported in 95 S. W. 314. One of the judges of that court being of the opinion that its decision is contrary to Cole v. Skrainka, 105 Mo. 309, the cause was transferred to this court.

It is based upon a special assessment, made according "to the front foot rule," against defendant's lot for its proportionate part of the cost of paving Main or Fifth street in said city with vitrified brick. The original taxbill was issued December 12, 1899. The Central National Bank was erroneously named therein as the owner of the lot, and, on that account, an amended taxbill was subsequently prepared, as stated.

The petition contains averments showing the letting of the contract to Hogan, the completion of the work by him, the issuing of the original and amended taxbills and the assignment to the relator. As no point is made upon the petition, its allegations need not be further stated. The answer admits the execution of the taxbills, their assignment and the ownership of the lot by the defendants.

The defense relied upon is, in substance, that the contract made by the city officials with Hogan contained materially different specifications concerning the manner of doing the work, as well as different terms, from those in the ordinance authorizing the improvement and inviting bids therefor, and that the property owners were thereby, in legal effect, deprived of the benefit of competitive bidding for doing the work in the manner and upon the terms stated in the contract with Hogan. Also, that no proper estimate of the cost of the improvement was submitted to the council before the contract was entered into; and, further, that the legislative duty devolving upon the

council to determine the materials for paving the street was delegated to the street committee and engineer.

Plaintiff, in reply, denied the new matter in the answer.

The city council, on said 20th day of June, 1899, adopted a resolution, declaring it was necessary to pave said street and that inasmuch as there were not sufficient funds in the city treasury to pay therefor, without incurring an indebtedness, the cost of the proposed improvement, after the necessary grading had been done at the expense of the city, should be levied as a special assessment against the lots abutting thereon, and that special taxbills should be issued to the contractor in payment therefor. This resolution was published the requisite length of time.

Plans and specifications were prepared by Captain Samuel W. Ravenel. These specifications, after providing for a bed of sand four inches thick to be laid on the street, further required that on this bed of sand there should be laid one course of local hard brick, *and that this course should then be rolled once with the city roller. Provision was made for an inspection by the superintendent after this course had been thus rolled, and that all broken or crushed brick should be removed by the contractor and be replaced by good bricks tamped to their places.* Sufficient sand was then required to be placed on this course, so that after filling all the voids and joints, and after the sand had been swept in and manipulated, there should remain a cushion of sand one inch thick and of uniform and even bearing surface. On this cushion of sand the wearing course of vitrified brick was to be placed, and this course, the specifications said, "shall also be rolled with *the city roller,* and then inspected by the city engineer or the superintendent in charge, and all cracked or broken bricks shall be removed and replaced with new bricks by the contractor."

: At the time these specifications were prepared, the city of Boonville owned a roller which could only be operated by horses or mules, and weighed seven tons, and had no other roller at that time.

Captain Samuel W. Ravenel testified that as soon as he had written the specifications it occurred to him that the materials required the use of another roller, and that on the 2nd or 5th of July, he bought *a small hand roller* from a Mr. Felton, and notified the mayor and members of the council individually thereof, who consented to the purchase, and a resolution authorizing him to make the purchase was passed by the council August 9, 1899.

Notwithstanding the conclusion, after writing the specifications, that another roller would be needed, no *change* or *alteration whatever* was made in the *written* plans and specifications, but, on the contrary, they were filed with the city council in the form in which they were originally drafted, and *in that form* were adopted by the council by an ordinance passed and approved on the 18th of July, 1899. This ordinance adopted the plans and specifications and directed that the work be done in accordance therewith, and that bids be solicited for that purpose. An advertisement was published, asking for sealed proposals for doing the work. The advertisement stated that the construction and completion of the paving must be performed in accordance with the requirements of the charter and ordinances of the city and the plans and specifications, which were on file for the inspection of bidders at the office of the city clerk. The only plans on file with the city clerk were the *written* ones requiring each course of brick to be rolled with the "city roller."

The bids were to be made upon forms furnished by the city. These forms contained this statement:

"I agree to construct said paving in accordance with the plans and specifications therefor on file in

the office of the city clerk of said city, and in accord-ance with the ordinance authorizing its construction.''

Captain Ravenel told Mr. Hogan, before the lat-ter's bid was put in, that he had purchased a small hand roller from a Mr. Felton, and that the first course of brick would be rolled with it. He gave the same information to Mr. Hurley, another prospective bidder, on the morning of the day on which bids were to be re-ceived.

He testified that his reason for telling these men that the small roller would be used was that they might, otherwise, understand from the specifications that they would have to roll both courses with the seven-ton roller.

One witness, Mr. Stammerjohn, stated that he had prepared a bid, but, upon further consideration, decided not to present it because of the requirement that the seven-ton roller should be used on the first course of local hard brick. There was evidence tend-ing to show that he received *verbal* information of the fact that two rollers were to be used, and plaintiff con-tended that he failed to bid because he expected to supply the local hard brick, and not on account of the specifications as to the roller, and the trial court found against the defendants on that issue.

It was shown in evidence that the city roller, weighing seven tons, could only be operated by mules or horses, and that the effect of driving these animals over the first course of local hard brick would be to displace many of them and break some of them into pieces; that while it was not an impossibility to use it, yet it would be more expensive to the contractor to do so, and the work would cost more money and re-quire a higher bid if the seven-ton roller should be used on the first course.

Hurley and Hogan submitted bids to the council, and that of Hogan was found to be the lowest. He

proposed to do the work with Moberly vitrified brick at $1.45 per square yard, and his offer was accepted.

After Hogan's bid was accepted, the contract with him, instead of providing that both courses of brick should be rolled with the seven-ton roller, stipulated that the local hard brick should be rolled *with a roller designated by the city engineer, and furnished by the city,* and the second or last course, composed of vitrified brick only, should be rolled by the seven-ton roller owned by the city. There was testimony tending to show that it would have been more expensive to the contractor to use the larger roller on the first course of brick and that if he had been required to use the seven-ton roller on the first course, his bid would have been higher.

Plaintiff was permitted to show that the street paved in the manner required by the contract was in as good, or better condition, than if the original specifications had been followed. Defendants objected to this evidence, on the ground that there was a departure in Hogan's contract from the plans, specifications and terms prescribed by the ordinance under which bids were invited, and that it was no answer to this objection to say that the street was as well or better paved than if the specifications had been followed.

The only estimate of the cost of the work presented to the council was submitted by Captain Samuel W. Ravenel, who signed the same as city engineer. He was appointed city engineer in 1896. No ordinance establishing the office of city engineer in the city of Boonville was introduced. Capt. Ravenel was not a resident of the city, and had not resided therein for a number of years. He was employed to do engineering work. He was not paid an annual salary, but received five dollars a day while employed by the city.

The estimate presented to the council by him is as follows:

"Boonville, Mo., July 18, 1899.
"To the Hon. Mayor and Council:

"Gentlemen:—In compliance with my duty as city engineer, I have computed the cost of paving Fifth street, from the middle of High street to the middle of Morgan, from the middle of Morgan to the middle of Spring and from the middle of Spring to the middle of Chestnut street, and find that the work should be done at a cost not to exceed $1.47 per square yard.

"Very respectfully,

"SAMUEL W. RAVENEL, City Engineer."

It also appeared that vitrified bricks were manufactured at Galesburg, Coffeyville and Moberly, and that they were of different grades and cost different prices in the market. Hogan's bid was $1.45 per square yard for Moberly brick and $1.52 for Galesburg brick.

The bids put a different price upon the work, depending upon whether Galesburg, Coffeyville or Moberly brick was used. The specifications only stated that vitrified brick of established reputation and acceptable to the committee on streets, alleys, sidewalks and sewers, and to the city engineer should be used, *and that a sample should be shown to them before bids should be put in.*

The ordinance, authorizing the work and inviting bids, declared that the total cost of the paving, and *also the cost of advertising and superintending the work* on the part of the city should be included in an assessment against the lots and pieces of ground, and that special taxbills should be issued to the contractor in payment and satisfaction therefor. The contract with Hogan did not require him to pay the cost of *advertising and superintending the work.*

The resolution declaring it to be necessary to pave Fifth street with vitrified brick also announced that there were not sufficient funds in the city treasury to pay for the same, and that the contractor must accept taxbills in payment therefor. The ordinance di-

recting the work to be done made the same statement, and the advertisement soliciting proposals to do the work advised prospective bidders that the entire price would be paid in taxbills. After the completion of the work, however, the city council determined to pay, in cash, out of the city treasury, for paving the areas formed by the crossing of streets and alleys, and did in fact pay to the contractor, Hogan, in money, about twenty-five per cent of the total cost of the improvement.

The ordinance of July 18, 1899, declared that the paving should be paid for by special, assessments against the lots and pieces of ground abutting on said improvement, and taxbills should be issued therefor in the manner provided by the charter and ordinances of the city. There was in force at that time in the city of Boonville an ordinance regulating the interest on taxbills. The section of this ordinance bearing upon that question was introduced in evidence. It declared that such special taxbills should bear interest, after thirty days from the date of issue and presentation, at the rate of eight per cent per annum.

After the completion of the work by Hogan and its acceptance by the city authorities, an ordinance was passed apportioning the cost to the various lots and directing the issue of taxbills against the same. This ordinance provided that the taxbills should draw interest after thirty days from their respective dates at the rate of eight per cent per annum.

Plaintiff offered to prove by the contractor that the original taxbill against the Central National Bank was presented by him to one of the defendants in person and payment thereof demanded, within ten days after the date of said original taxbill, and payment was refused; but the court held that no demand was necessary, under the ordinance, and declined to hear the evidence, so no proof in regard to a demand was introduced by either party.

Defendants, at the conclusion of the testimony, asked the court to sustain a demurrer to the evidence, which was refused.

A declaration of law was also asked by the defendants setting out that the plans and specifications adopted by the ordinance under which bids were invited, provided that the first course of local hard brick should be rolled once with the city roller, and that said ordinance further provided that the cost of advertising and superintending the work on the part of the city should be included in the taxbills to be issued to the contractor, and that the entire work should be paid for by special assessments against the abutting property; but that the contract entered into with Hogan after the work was let to him provided that the first course of hard brick should be rolled by a roller to be designated by the city engineer and furnished by the city, and that only the last course of vitrified brick should be rolled with the city roller; and that said contract did not require the contractor to pay the cost of superintending the work on the part of the city or the cost of advertising, and to accept taxbills in payment for the same; and if the court should find that the contract was more favorable to and less burdensome upon the contractor, and that the work could be done by him at less expense than under the plans, specifications and terms prescribed in the ordinance calling for bids for said work, and under which bids were submitted, the taxbill sued on was void and the finding should be for the defendants.

Another declaration of law on the part of the defendants declared that there was no evidence that the taxbill was ever presented to the owner of the property, and plaintiff in no event could recover any interest on said taxbill. The court was further asked to declare that the amended taxbill sued on could not in any event bear interest except from the date of its issue, and the fact that a prior taxbill was issued

against the Central National Bank would not authorize the court to award interest in this case prior to the date of the taxbill sued on, even if the court should find said amended taxbill to be valid. The court refused to give any of these declarations of law.

The court found the issues for the plaintiff and rendered a special judgment against the defendants' property for the full amount of the amended taxbill, with interest thereon at the rate of eight per cent per annum, from thirty days after the date of the original taxbill.

It is conceded that proceedings to charge abutting property with the cost of street improvements are *in invitum,* and that substantial compliance with the statute must be shown in order to bind the property. It is also true that the city council cannot make a valid contract for the improvements different in its terms from those contained in the specifications and advertisement for competitive bids.

I. Appellants contend that the provision in the contract for the use of the small roller on the first course of brick invalidated the contract. It is true that at the time the specifications were drawn the city had only one roller, the seven-ton one. But before those specifications were adopted by the city council, to-wit, on July 2 or 5, the city engineer, in pursuance of verbal authority from the mayor and the members of the city council, bought for the city the small roller. On July 18, thereafter, the city council adopted the specifications. At that time the city owned two rollers. Either one of them could very well be called the "city roller." It is not necessary in this case for the plaintiff to show that the city had legally acquired the title to the small roller. It is sufficient for the purposes of this case, that at the time of the adoption of the specifications the city had possession of the roller, claiming it as its own. At the time the bids were

made, all parties understood that the contract was to be let on the basis that the small roller was to be used on the first course of brick, and the larger one on the last course. It is well established law that in the construction of laws, ordinances and contracts, they are to be construed so as to uphold their validity where their language will permit, as against a construction which will invalidate them. [Wiggins Ferry Co. v. Railroad, 128 Mo. 224; Glover v. Insurance and Security Co., 130 Mo. 173; Sedalia ex rel. v. Smith, 206 Mo. 346 (l. c. 363), and cases cited.]

There is no reason why the same rule should not be applied in the construction of the language of the specifications, which by the terms of the contract were made a part of it. If that language be construed to mean that the first course of brick as well as the second should be rolled with the larger roller, it would invalidate the contract based on those specifications. If it be construed to mean that the small roller should be used on the first course, it would validate that contract. So far as the language of the specifications is concerned, it applies to one roller as well as to the other, for they were both ''city rollers'' at the time of the adoption of the specifications and at the time of the advertisement.

There is another reason, and perhaps the main one, why the advertisement should be construed to contemplate the use of the smaller roller on the first course of brick. It was the understanding of all parties that the smaller roller was to be so used. It is true that there was evidence both ways as to whether Mr. Stammerjohn so understood it, but the fact was found against appellants by the trial court and is not open for consideration here.

In Cole v. Skrainka, 105 Mo. 303 (l. c. 311), Judge BLACK in considering this question says: There was no deception or misunderstanding, and the contract is just what the council intended it should be. In view

of all these circumstances, it must be, and is now, held that the contract conforms to the ordinance.''

II. The fact that the city paid about twenty-five per cent of the cost of the improvement, while the ordinance provided that the contract should accept special taxbills for the entire cost, does not invalidate the taxbill. The mere fact that one-fourth of the appellants' burden is graciously lifted from their shoulders is no reason why the other three-fourths should be thrown upon those who ought not to bear it. [State ex rel. v. Flad, 26 Mo. App. 503.]

III. The estimate made by the city engineer is not a vague and uncertain thing. In the first place the engineer therein says: ''In compliance with my duty as city engineer, I have computed the cost of paving Fifth street . . . and find that the work should be done at a cost not to exceed $1.47 per square yard.''

That language shows that the engineer had ''computed the cost.'' We will not conclude that after computing that cost, he threw the result of his computation away and fixed a maximum amount having no reference to the result of his computation or to the actual cost. The plain meaning of the language used is that he estimated that it would cost $1.47 per square yard, and that it might cost less, but should not cost more.

In the case of City of Boonville v. Rogers, 125 Mo. App. 142, it is said (l. c. 150): ''To merely say that the costs of making a given improvement will not exceed three hundred dollars affords little information to a city council in letting a contract for its construction. It does not amount to an approximation of the cost of construction, only a limit to the cost.'' The language of the estimate in this case, as above shown, does far more than merely state that the costs will not exceed $1.47 per square yard.

To estimate anything is defined to be "the fixing of the worth or value roughly or in a general way, sometimes from imperfect data."

We think the estimate was sufficient.

IV.   It is claimed that Capt. Ravenel was not city engineer.; for the reason that no ordinance was shown in evidence creating such office, and that there can be no officer *de facto* where there is no *de jure* office.   We cannot unqualifiedly agree to that proposition.   The statute does not create the office of city engineer.   Section 5765, Revised Statutes 1899, gives the mayor power, with the consent of the council, to appoint "a street commissioner and such other officers as he may be authorized by ordinance to appoint."

Subdivision 8 of section 5858 required the city engineer or other proper officer to make the estimate. There can be no doubt then that the city council had the power to create the office of city engineer.   Capt. Ravenel had acted as such city engineer for the period of eight or ten years.   He was recognized as such officer by the city council in the ordinances concerning this improvement.   Every one connected with the city government for that long period, and every one concerned in city matters wherein the engineer's services were necessary, was evidently under the impression not only that there was an office of city engineer, but that Ravenel was such officer.

Now the objection is made that because no ordinance is shown creating such office, the foundation has fallen from under these taxbills.   Such a result is a *non sequitur*.

The case of Adams v. Lindell, 5 Mo. App. 197, adopted and approved by this court on appeal in 72 Mo. 198, was a proceeding on a special taxbill.   The court said (l. c. 202): "If the citizen is in no way in fault, if in his dealings he trusts to the non-legal authorities in whom all believe, his rights are not to

be destroyed. When he is in fault, the case is differ-
ent. But when he himself meets all legal requirements,
it is evident that the necessity which creates the rule
of validation may exist in precisely the same way and
degree where there is no legal office as where there
is merely no legal officer; and it is further evident that
to apply the principle to cases where there is no legal
office is taking no new or further step.''

That case was followed and approved in Perkins
v. Fielding, 119 Mo. 149 (1. c. 159), and Hilgert v. Pav-
ing Co., 107 Mo. App. 385.

V. It was declared in the ordinance under which
proposals were asked that the taxbills should be issued
under and in accordance with the charter and ordi-
nances of the city. A general ordinance was then in
force providing for interest upon such special taxbills
thirty days after the date of their issue and presenta-
tion. The ordinance adopted after the work was com-
pleted directed that the taxbills sued on should bear
interest thirty days from their date without reference
to a demand.

Appellant insists that such provision in the latter
ordinance gave the contractor an advantage over other
bidders. All the bidders were on equal terms in that
respect. Such a provision was not contained in the
contract with Hogan. That ordinance was passed af-
ter the work was done, hence could not have been an
inducement to Hogan to make the bid or enter into
the contract. Now the law presumes that the residents
of a city are aware of the provisions of its ordinances.
[Palmyra v. Morton, 25 Mo. 1. c. 597.] The special
ordinance providing for the issuing of these special
taxbills was passed December 11, 1899, and provided
they should bear interest after thirty days from their
respective dates at eight per cent per annum. The
eight per cent was not any part of the compensation
for the work. It was interest, compensation for the

use of the contractor's money after it was due and should have been paid. The payment of the taxbill within thirty days from its date would have avoided any interest.

The Kansas City Court of Appeals held in Galbreath v. Newton, 45 Mo. App. l. c. 323, that plaintiff was entitled to interest from the date of the original taxbill. It is true that in St. Joseph ex rel. v. Forsee, 110 Mo. App. l. c. 242, it was held that the use of the word "interest" in the statute then under consideration was a misnomer and that it was a penalty and not interest, and, being a penalty, was not recoverable on an amended taxbill for the period prior to the date of the amended taxbill.

That case cited City of St. Louis v. Allen, 53 Mo. 57; Bank v. Woesten, 176 Mo. 60; Tipton v. Norman, 72 Mo. 380; Eyerman v. Blaksley, 78 Mo. 145. An examination of those cases shows that this court held that there may be a provision for either interest or a penalty, or both in case of non-payment. A penalty, being enforcible only *strictissimi jure,* would not relate back to the date of the original taxbill. The provision in this case for eight per cent interest from thirty days from the date of the bill is clearly, as stated in the statute, interest and not a penalty, and no good reason appears for not holding that it relates back to the date of the original bill.

The ordinance under which these taxbills were issued provided that they should bear interest at eight per cent from their respective dates.

The statute authorizes such an ordinance, and we hold that the taxbill bore interest from thirty days after the date of the original bill.

The judgment of the trial court herein is affirmed. *Bond, C.,* dissents.

PER CURIAM.—The foregoing opinion of ROY, C., is adopted as the opinion of the court.

## ON MOTION FOR REHEARING.

PER CURIAM.—Our attention has been called to the fact that the judgment provides that it shall bear eight per cent interest from the date of its rendition, and to Gilsonite Co. v. St. Louis Fair Assn., 231 Mo. l. c. 603, holding that it is error for the judgment to call for more than six per cent interest from its rendition. In that case the judgment was reversed and the cause remanded with direction to enter up judgment as of the date of the original judgment, but at *six* per cent. In this case the motion for a new trial did not call attention to that point, and there was no motion in arrest, so that the attention of the trial court was not called to it. We will not therefore reverse the judgment, but we modify it here so that it shall bear interest at six per cent per annum from its original rendition until paid.

. With the foregoing modification, the judgment is affirmed.