*SHULTZ v. RITTERBUSCH, *County Treasurer, et al.*

No. 4436.   Opinion Filed May 13. 1913.

On Rehearing, July 15, 1913.

(134 Pac. 961.)

1.  MUNICIPAL CORPORATIONS — Assessments for Street Im-
    provements—Statute of Limitations. The period of limitation
    by statute (Comp. Laws 1909, sec. 728 [Rev. Laws 1910, sec.
    644]), within which an action may be brought to set aside a
    special assessment made against lots abutting upon a street to
    pay the cost of street improvement, applies to bar the lot own-
    er, in an action to enjoin the collection of such assessment, as
    to all defects in the assessment proceeding which are not juris-
    dictional.

2.  SAME—Assessments for Street Improvements—Validity—Con-
    struction of Statute. Where, pursuant to article 2, c. 8, Sess.
    Laws 1901 (article 6, c. 12, Wilson's Rev. & Ann. St. 1903), pro-
    ceedings were commenced for the construction of street im-
    provements, and progressed so far as to result in a contract
    between the city and a construction company, the execution of
    which was thereafter perpetually enjoined. and where pending
    said proceedings an Act approved April 17, 1908, was passed,
    after which the city abandoned all proceedings under the former,
    and proceeded to make the proposed improvements under the
    latter act before the same became effective, which were aban-
    doned, and where, after said act became effective, the city passed
    and published the resolution of intention in question, the com-
    mencement of the assessment in controversy, and which is un-
    assailed, held, that Comp. Laws 1909, sec. 732, means that the
    proceedings, if commenced under the prior act, should not
    be affected by the latter act, and might be completed,
    if at all, pursuant to the prior act; held, further,
    that all proceedings of the city council looking to said im-
    provements were necessary preliminary steps to be taken by
    the common council, and in its discretion might be receded from
    at any time before the contract for the improvement is con-
    cluded.

3.  SAME—Jurisdictional Question—Engineer's Charges.   Where
    Comp. Laws 1909, sec. 725 (Rev. Laws 1910, secs. 622-625), pro-
    vides that upon the passage of a resolution for street improve-
    ment, it shall be the duty of the city engineer to prepare speci-
    fications for such improvements, together with an estimate of

_____

* Appealed to the United States Supreme Court.

the cost of the same, etc., which was done, and where it does not appear that the engineer was a salaried officer of the city, held that, if an item of $6,091.24 for the city engineer's charges is a proper item to be assessed upon the abutting property as a part of the cost of such improvements, the objection thereto does not run to the jurisdiction of the council to make the improvement.

4.  SAME—Constitutional Law—Due Process—Interest. Comp. Laws 1909, secs. 726, 727 (Rev. Laws 1910, secs. 626-639, and 642, 643), construed, and held to be constitutional, and to authorize the collection of seven per cent. per annum upon assessments prior to maturity, and if not paid when due, eighteen per cent. per annum thereafter until paid.

## On Rehearing.

5.  STATUTES—Local and Special Laws—Assessment for Street Improvements—Interest. Comp. Laws 1909, secs. 726, 727 (Rev. Laws 1910, secs. 626-639, and 642, 643), construed, and as to that part which authorizes the collection of seven per cent. per annum upon assessments prior to maturity, and, if not paid when due, eighteen per cent. per annum thereafter until paid, held, that such provision is not in violation of the Constitution, which prohibits the General Assembly to pass any local or special law "fixing the rate of interest," for in no sense is said eighteen per cent. "interest," but is in reality a penalty to secure prompt payment, imposed for the neglect of duty.

(Syllabus by the Court.)

*Error from District Court, Logan County;*
*A. H. Huston, Judge.*

Action by J. F. Shultz against Fred W. Ritterbusch, county treasurer, and others. Judgment for defendants, and plaintiff brings error. Modified.

*Milton Brown,* for plaintiff in error.
*Parker H. Hoag, Tibbetts & Green,* and *W. H. Harris,* for defendants in error.

TURNER, J. On November 6, 1911, in the district court of Logan county, J. F. Shultz, plaintiff in error, sued to enjoin Fred W. Ritterbusch, treasurer of Logan county, from selling lots 7 to 12, inclusive, in block 38 in the city of Guthrie, the property of plaintiff, which had been levied

upon to pay a special assessment theretofore taxed against them for the paving of certain streets in said city, making the city, its mayor, board of commissioners, city clerk, and his successor in office, city treasurer, and J. F. Hill, the paving contractor, parties defendant. After a temporary injunction had issued, he filed an amended petition, and narrowed his attack to Noble avenue, upon which said lots abut, known as paving district No. 1, and assailed the assessment proceedings upon certain grounds. As a result of a motion to strike, a number of those grounds were eliminated by the court, and, after issues joined, the cause was tried upon the allegations of the petition assailing the proceedings in the following particulars only:

"(1) The proper enactment and approval of House Bill No. 231. (2) The constitutionality of House Bill No. 231. (3) The alleged failure to adopt and publish the preliminary resolution of intention to pave, provided for in section 2 of said act. (4) The failure to give the notice of the hearing on the return of the appraisers, provided for in section 5 of said act. (5) The allegations as to the contract being in excess of the estimate of cost submitted by the city engineer. (6) The allegations as to the additional 5 per cent. being added to the contract price for engineering and publication fees. (7) The allegations as to the constitutionality and illegality of the law, requiring the collection of one per cent. in addition to the rate provided in the bonds, and eighteen per cent. penalty provided for in said act. (8) The allegations contained in the first cause of action as to the proceedings under the law of 1901."

Among other defenses invoked was Comp. Laws 1909, sec. 728 (Rev. Laws 1910, sec. 644), which reads:

"No suit shall be sustained to set aside any such assessment, or to enjoin the mayor and council from making any such improvement, or levying or collecting any such assessments, or issuing such bonds, or providing for their payment as herein authorized, or contesting the validity thereof on any ground or for any reason other than for the failure of the city council to adopt and publish the preliminary resolution provided for in section two in cases requiring such resolution and its publication and to give the notice of the hearing on the re-

turn of the appraisers provided for in section five unless such suit shall be commenced within sixty days after the passage of the ordinance making such final assessment, provided * * *" '

There was trial to the court and judgment for defendants sustaining the validity of the assessment, and plaintiff brings the case here.

The record discloses that, for street improvement purposes, the city was divided into paving districts, which the defendant in error Hill, on December 11, 1908, contracted with the city to pave; the city agreeing "to pay for all said work in street improvement bonds to bear interest at six per cent. per annum issued by the city, which the contractor agrees to accept at par," and which were delivered when the work was done, said Hill receiving said bonds in the sum of $90,454.83, dated November 6, 1909, for paving said district No. 1. As to the payment of said bonds the contract further provided:

"The city further agrees that it will cause the levy and collection of assessments against the property liable to the same under the laws of the state of Oklahoma, and will levy and collect annually a sufficient tax to pay the bonds so to be issued, with the annual interest thereon, as the same shall become due, * * *"

The record further discloses that the assessing ordinance was passed October 22, 1909, providing for the payment of the cost of the improvements in ten annual installments, and that, when the county treasurer on tax sale day in November, 1911, sought to sell said lots to enforce the payment of the first installment, which fell due September 1, 1910, this suit was brought.

Upon this state of the record, the court being of opinion that defendants should be enjoined from collecting interest at the rate of seven per cent. per annum upon the unpaid installments chargeable against the property of plaintiff, and that the officers should be directed to collect interest at the rate of six per cent. per annum, and no more, in all cases wherein the installments maturing each year are paid at or before the time

fixed for the payment thereof by law, and that defendants should be enjoined from certifying for collection and collecting more than ten per cent. per annum interest or penalty on or upon installments which may become delinquent from date of maturity to time of sale, and that all other relief prayed for by plaintiff should be denied, it was therefore ordered, adjudged, and decreed by the court:

"* * * That the defendants herein and each of them be and they are hereby perpetually enjoined from collecting interest at the rate of seven per cent. per annum upon unpaid installments chargeable against the property of the plaintiff set out in his petition in this cause and all others similarly situated, and the said defendants and each of them be further enjoined from collecting a penalty of eighteen per cent. upon installments becoming delinquent between the maturity thereof and date of sale, but the proper officers are directed to collect interest upon all installments paid at or before maturity at the rate of six per cent. per annum and no more, and upon all delinquent installments for the period between the date of maturity thereof and date of sale, at the rate of ten per cent. per annum and no more, and, after date of sale, all such delinquent installments to bear interest or penalty at the rate of eighteen per cent. as provided by law. It is further ordered, adjudged, and decreed by the court that the city clerk of the city of Guthrie be and he is hereby directed to return to all such persons as have paid their installments of taxes maturing September 1, 1911, at or before maturity thereof at seven per cent. per annum, an amount equal to one per cent. of the total unpaid assessment. It is further ordered, adjudged, and decreed by the court that the prayer of plaintiff's petition be and the same is in all other respects denied."

From the judgment the city and the contractor prosecute their separate cross-appeals, and ask that the same be modified so as "to permit and require the collection of interest upon assessments made for the improvements aforesaid, at the rate of seven per cent. until maturity, and at the rate of eighteen per cent. after maturity, if not paid when due, as provided by law, and that said judgment and decree be in all other respects affirmed."

As plaintiff has made a large number of assignments of error, and we are not clear upon just which of them he relies for reversal, his objections to the assessment proceeding, as set forth in defendants' brief and not disclaimed by him, will be adopted by us, and are:

"(1) That the pavement of the district in question was first sought to be done under the paving law of 1901, and that those proceedings could not be abandoned. (2) That there was added to the actual cost of construction a sum equal to five per cent. of the contract price to pay for engineering fees, expenses of publication, etc. (3) That, in addition to the cost of paving and guttering, the property owners were assessed with the cost of drainage pipes, such as storm sewers. (4) That the cost of paving street intersections and alley crossings could not properly be taxed as special assessments against the property owners. (5) That the work and material were of a defective quality, and that the work was left in an incomplete condition. (6) That the amount assessed against the lots of plaintiff in error was improperly increased from time to time. (7) That improper charges were about to be made under the tax sale notice. (8) That the paving act is unconstitutional in that it permits steam and street railways to pave along and between their tracks running parallel with the street, under private contract. (9) That the provisions of the act providing that the assessment shall bear interest at seven per cent. prior to maturity, and eighteen per cent. after maturity, whereas the bonds to be paid for thereby bear six per cent. prior to maturity, and ten per cent. after maturity, are unconstitutional and void. (10) Other alleged constitutional objections, which we consider it unnecessary to discuss."

Speaking to the effect of a statute of limitations similar to that, supra, invoked by defendant in Morrow v. Barber Asphalt, etc., Co., 27 Okla. 247, 111 Pac. 198, quoting approvingly from Steinmuller et al. v. City of Kansas City, 3 Kan. App. 45, 44 Pac. 600, we said:

"We do not think this statute can be interposed to aid an assessment which is void on jurisdictional grounds on the face of the proceedings. It should be held to apply only

to such defects and irregularities in the proceedings as would render them voidable, but not void."

In *Kerker et al. v. Bocher et al.*, 20 Okla. 729, 95 Pac. 781, section 2 of the syllabus reads:

"Abutting property owners, with knowledge that such paving is being done with the intention of levying a special tax upon them for payment of the same, and permitting such improvement to be done without objection to the council, and knowingly receiving the benefits, when afterwards they seek relief in equity to escape payment thereof, will be deemed to have ratified the same, and estopped from setting up any irregularity, except when it goes to the extent of jurisdiction."

In the light of which we hold that plaintiff is confined to jurisdictional defects in assailing the proceedings sought to be enjoined.

Pertinent to the first objection the record discloses that, prior to the institution of the proceedings assailed, the city, to wit, in September, 1907, pursuant to article 2, c. 8, Sess. Laws 1901 (article 6, c. 12, Wilson's Rev. & Ann. St. 1903), commenced similar proceedings to make improvements of like character in the same location; that the same progressed so far that on February 12, 1908, a contract therefor was made by the city with the Stuckey Construction Company, after which, at the suit of one Brummage in the district court, the execution thereof was perpetually enjoined; that pending those proceedings an act approved April 17, 1908, was passed, and, when thus enjoined, the city abandoned all proceedings under the former, and proceeded to make the proposed improvements under the later act, which did not become effective until 90 days after the adjournment of the Legislature. Accordingly, on May 28, 1908, and before the expiration of that time, the city passed and published a resolution of intention to pave, and overruled protests thereto, but which the city, upon discovering the same to be premature, abandoned, and on September 24, 1908, passed and published the resolution of intention, which is the commencement of the assessment in contro-

versy, and which is unassailed.   Because of the fact that it is provided in the latter act (Comp. Laws 1909, sec. 732) :

"In such cities any such improvements in process of being constructed under the laws heretofore in force in this state or for which proceedings have been commenced under such laws at the time this act takes effect, shall be completed and paid for under such laws, and said laws are hereby extended in force as to such improvements until such improvements shall be completed and paid for as by such laws provided * * *"

—it is contended by plaintiff, in effect, that the proceedings under the prior act could not lawfully be abandoned, and that all proceedings under the latter act were without effect to vest the city with jurisdiction of the subject-matter.   In other words, his contention is "* * * that it was the duty of the then mayor and council to proceed from the 'point of departure,' namely, the illegal letting of a contract to the Stuckey Construction Company, and let a new and valid contract, and proceed as stated in section 11 of said last named act, and 'complete and pay for such improvement under the prior law.'"

In support of his contention he cites nothing save the statute, but, as his contention, if sound, would operate to render void the proceedings assailed, we will consider it.   But we cannot agree with plaintiff's contention, for the reason that all said section means is that the proceedings, if commenced under the prior act, should be treated analogous to a proceeding commenced in a court under said act, and as unaffected by the latter act and completed, if at all, pursuant to the prior act.

And there can be no reason why the city may not reconsider and conclude not to make the proposed improvements and abandon all proceedings with reference thereto, at any time prior to the making of the contract.   As to all proceedings leading up to the contract, and particularly with reference to abandoning the proceedings enjoined by Brummage and the resolution adopted May 28, 1908, it might be

said, as was said in *Barber Asphalt Co. v. Edgerton et al.,* 125 Ind. 455, 25 N. E. 436, in speaking of the preliminary resolution to make the improvement:

"It is a mere preliminary step, looking to a public improvement, to be made or not, as the common council in its discretion may determine, from which it may recede at any time before the contract for the improvement is concluded."

Concerning the contention that the latter act, pursuant to which these proceedings were commenced, which terminated in the assessment complained of, is unconstitutional, it is sufficent to say that we have carefully examined all that has been said in this cause bearing on the question, and are of opinion that the act is valid and must stand—but of this later.

It is further contended that, as the resolution of the city council of date December 2, 1909, providing for a bond issue to pay the contract price for the improvements made in district No. 1, discloses that "* * * the paving has not been fully completed from the west line of Fifth street to the east line of Second street on account of proposed Noble Avenue Viaduct, and the costs of said incompleted improvements has been ascertained and estimated by the city engineer at the sum of eight thousand and thirty and 23/100 ($8,030.23) dollars, and said sum has been included in the assessment made for such district No. 1," and the contract provides, "in consideration of the completion by said contract of all work in this contract, in strict conformity with the specifications hereinbefore referred to, the city hereby agrees to pay the following prices, viz. (then follows a list of prices)," and the time to complete the work has expired, the collection of this assessment should be restrained. Not so, for the reason that the question raised is not jurisdictional, and, besides, said resolution further declares:

"Now, therefore, the city treasurer is hereby authorized and directed to hold and retain bonds of said series hereby authorized to the amount of eight thousand forty-five and 48/100 ($8,045.48) dollars designated as follows, to wit: Bonds numbered eleven (11), forty-five and 48/100 ($45.48)

dollars, No. 20, five hundred ($500.00) dollars, No. 31, five hundred ($500.00) dollars, No. 34, one thousand ($1,000.00) dollars, No. 45, one thousand ($1,000.00) dollars, No. 56, one thousand ($1,000.00) dollars, No. 67, one thousand ($1,000.00) dollars, No. 78, one thousand ($1,000.00) dollars, No. 89, one thousand ($1,000.00) dollars, and No. 100, one thousand ($1,000.00) dollars, and the city treasurer is hereby directed to credit on said bonds or coupons such interest as may be accrued from the date of the issuance of said bonds to the date of the delivery thereof, for the benefit of the property owners of said district. Said bonds to be held and retained, to be delivered upon order of the mayor and council to J. F. Hill, upon the completion and acceptance of said work"— which was done.

It is next assigned that there was added to the actual cost of construction a sum equal to five per cent. of the contract price for engineering fees, expenses of publication, etc., and for that reason the assessment is void. Pertinent to this assignment the record discloses that, no protest having been filed to the paving provided for by the resolution of September 24, 1908, *supra,* on November 5, 1908, the city council passed another resolution, fixing the streets to be paved, etc., and directing the city engineer to file plans, specifications, etc., together with an estimate of the costs of the proposed improvement, also directing the clerk to advertise for bids as directed by Comp. Laws 1909, sec. 725 (Rev. Laws 1910, secs. 622-625). Said estimate reads:

"Guthrie, Oklahoma, November 21, 1908.

"To the Honorable Mayor and City Council of the city of Guthrie, Okla.—Gentlemen: I herewith submit an approximate estimate of the cost of constructing paving upon Noble avenue, beginning at the west line of Drexel boulevard; thence west to the east line of 15th street, to be paved, curbed, and guttered according to the plans and specifications of the city of Guthrie.

"Including all excavation and filling, five-year guarantee:

| | | |
|---|---|---|
| 44,100 sq. yds. sheet asphalt paving, at | $ 2.17 | $ 95,697.00 |
| 17,000 lin. ft. curb & gutter, 3-ft. gut., at | 1.03 | 17,510.00 |
| 900 lin. ft. plain curbing at | .55 | 440.00 |
| 950 lin. ft. 3-ft. curbing, at | .80 | 760.00 |

Shultz v. Ritterbusch, County Treasurer, et al.

Storm Sewers, Including Excavation and Backfilling.

| | | |
|---|---|---|
| 9 manholes, at | 50.00 | 450.00 |
| 24 corner intakes, at | 15.00 | 360.00 |
| 6 side intakes, at | 15.00 | 90.00 |
| 1,025 lin. ft. 24-in. pipe, at | 2.25 | 2,306.25 |
| 1,085 lin. ft. 18-in. pipe, at | 2.00 | 2,170.00 |
| 380 lin. ft. 12-in. pipe, at | 1.75 | 665.00 |
| 850 lin. ft. 8-in. pipe, at | .60 | 510.00 |
| 55 lin. ft. 6-in. pipe, at | .50 | 27.50 |
| 2 lin. ft. headwalls 8 cu. yd. mas., at | 13.00 | 104.00 |

Sidewalk Extensions.

| | | |
|---|---|---|
| 1,200 lin. ft. brick, at | .50 | 600.00 |
| 180 lin. ft. cement, at | .75 | 135.00 |
| Engineering and publishing 5 per cent | | 6,091.24 |
| Total | | $127,915.99 |

"Respectfully submitted,

"(Noble Avenue)                    City Engineer."

This was precisely what was done and complained of in *Arnold v. City of Tulsa, ante,* 132 Pac. 669, where, in the syllabus, we said:

"Where article 9, sec. 1, of the charter of the city of Tulsa provides that, upon the passage of a resolution for street improvement, it shall be the duty of the city engineer to prepare specifications for such improvements embracing the different matters or different plans or methods under which said improvements are to be constructed, which was done, and, where it appears that said engineer was not a salaried officer of the city, *held,* that an item of $335.14 for the engineer's charges is a proper item to be assessed upon the abutting property as a part of the cost of such improvement."

And so we might hold but for the fact that the objection runs not to the jurisdiction of the city to make the assessment, and, as we have just held, such only can be considered here. There is no fraud with reference to this or any other item involved in this assessment. So held the trial court, and, as our attention has not been called to any evidence tending to prove that such existed, said finding is conclusive on us.

Plaintiff's remaining contentions can best be disposed of by considering all of merit in connection with the assignments

set forth in the cross-petition in error of the city and the contractor. They are the same, and read:

"(1) In holding that the assessments levied against the properties owned by plaintiff and others similarly situated for the payment of said street improvements should be charged with interest at the rate of only six per cent. per annum prior to maturity, whereas the law provides for the collection of interest at the rate of seven per cent. per annum, and in enjoining the collection of the full interest rate of seven per cent. (2) In holding that the assessments against said properties, if not paid when due, were chargeable with interest at the rate of only ten per cent. per annum from maturity until date of sale of the property therefor, whereas the law provides for the collection of interest during said period at the rate of eighteen per cent. per annum, and enjoining the collection of interest during said period at the rate of eighteen per cent. per annum."

In support of their contention that the court erred, cross-petitioners rely on the letter of the statute.

Comp. Laws 1909, sec. 726 (Rev. Laws 1910, secs. 626-639), reads:

"As soon as the contract is let and the cost of such improvement, which shall also include all other expenses incurred by the city incident to said improvement in addition to the contract price for the work and materials, is ascertained, the mayor and council shall, by resolution, appoint a board of appraisers, to appraise and apportion the benefits to the several lots and tracts of land which shall be designated in said resolution. * * * Assessments in conformity to said appraisement and the apportionment as corrected and confirmed by the council shall be payable in ten equal installments, and shall bear interest at the rate of seven per cent. per annum until paid, payable in each year at such times as the several installments of the assessments are made payable each year. * * * The first installment of said assessments, together with interest to that date upon the whole shall be due and payable on the first day of September next succeeding the passage of said ordinance and one installment, with the yearly interest upon the amounts remaining unpaid, shall be payable on the first day of September in each succeeding year until all shall be paid, provided, however, that in case said assessment and in-

terest is not paid when due, the assessment so matured and unpaid shall bear interest at the rate of eighteen per centum per annum until paid. * * * The mayor and council, after the expiration of said thirty days, shall by resolution provide for the issuance of bonds in the aggregate amount of such assessments remaining unpaid, bearing date fifteen days after the passage of the ordinance levying the assessments and of such denominations as the mayor and council shall determine, which bond or bonds shall in no event become a liability of the city issuing the same. One-tenth in amount of any such series of bonds, with the interest upon the whole series to that date, shall be payable on the fifteenth day of September next succeeding the maturity of the first installment of the assessments and interest and one-tenth thereof with the yearly interest upon the whole amount remaining unpaid shall be payable on the fifteenth day of September in each succeeding year until all shall be paid. Such bonds shall bear interest at a rate not exceeding six per cent. per annum from their date until maturity, payable annually and ten per cent. from maturity until paid. * * *"

Section 727 (Rev. Laws 1910, secs. 642, 643) reads:

"The assessments provided for and levied under the provisions of this act shall be payable by the person owning the same as the several installments become due, together with the interest thereon, to the city clerk of such city, who shall give proper receipts for such payments. * * * It shall be the duty of the city clerk to keep an accurate account of all such collections by him made, and to pay to the city treasurer daily, the amounts of such assessments collected by him and the amounts so collected and paid to the city treasurer shall constitute a separate special fund to be used and applied to the payment of such bonds and the interest thereon and for no other purpose. It shall be the duty of such city clerk, not less than thirty days and not more than forty days, before the maturity of any installment of such assessments to publish in two successive issues of a daily paper, or in one issue of a weekly newspaper, published and of general circulation in said city, a notice advising the owner of the property affected by such assessment of the date when such installment and interest will be due and designating the street, streets or other public places for the improvement of which such assessments have been levied and that unless the same shall be

promptly paid shall bear interest at the rate of eighteen per cent. per annum thereafter until paid, and proceedings taken according to law to collect said installment and interest; and it shall be the duty of the city clerk promptly after the date of maturity of any such installment of assessment and interest and on or before the fifteenth day of September in each year to certify said installment and interest then due to the county treasurer of the county in which said city is located, which installment of assessment and interest shall be by said county treasurer placed upon the delinquent tax list of said county for the current year and collected as other delinquent taxes are collected.  *   *   *"

Of this statute, the court in *Ritterbusch v. Havinghorst*, 29 Okla. 478, 118 Pac. 138, said:

"The total cost of street improvement provided for by this statute is assessed against the property in the improvement district. Improvement bonds are issued with which to pay for the improvements.' One-tenth of the principal of these bonds becomes due and payable on the 15th day of September of each year, together with the interest on the amount of the bonds unpaid. The bonds, before maturity, may bear not exceeding six per cent. interest per annum, and after maturity, until paid, they bear ten per cent. per annum. It is the purpose of the statute that these bonds and all interest thereon shall be paid wholly out of the assessments levied against the property in the district, and the interest on such assessments. It is intended and contemplated that the assessments and interest thereon of any year shall pay the installment of bonds and interest maturing thereon during the same year. * * * The increased interest which the assessments are made to bear after maturity was provided, no doubt, not only for the purpose of securing the prompt payment of the assessments, but also for the purpose of providing a fund with which to pay the increased rate of interest on the bonds maturing, which must occur when there is delinquency in the payment of any assessment."

In passing upon this act, which is assailed as unconstitutional, it is unnecessary for us to inquire into the wisdom thereof, or to state why the Legislature required the bonds to bear six per cent. per annum from their date until maturity, and ten per cent. from maturity until paid, or why the assess-

ments to meet the bonds were required to bear interest at the rate of seven per cent. per annum, and, if not paid at maturity, to bear eighteen per cent. interest until paid. It is sufficient to say that the provision is clear and unambiguous, and means what it says. We can see nothing in conflict with the Constitution in the provision, in effect, that the assessments bear one per cent. greater interest than the bonds before due and eight per cent. greater thereafter. It may be that the difference of one per cent. between the bonds and assessments before due was intended to cover the cost of printting the bonds and of collection and remittance by the city, which, as to the amount collected on the assessments, stands in the nature of a stakeholder, and which would otherwise have to be paid out of the general funds of the city. And it may be that, in addition to those costs, said eight per cent. was intended to contribute to the expense incurred, where, as here, after assessments became due, the property owner resists payment by suit. But be that as it may, we are of opinion that said items of increased interest are in the nature of a penalty intended to meet conditions brought about in part by the property owner himself, and in no sense can it be said the same is exacted without due process of law.

1 Page & Jones on Tax. by Assmt. sec. 473, says:

"As a means of compelling prompt payment of assessments the Legislature may provide that a penalty shall be added to the amount of the assessment in case of nonpayment thereof. Such penalties cannot be added unless there is statutory authority therefor, however."

Section 475, *Id.*:

"The Legislature has power to determine in advance whether interest may be included in assessments or whether interest is not an item which can be included. The question is entirely one of policy. It may fix the rate of interest which tax certificates shall draw. The Legislature may delegate to the city the power of fixing the rate of interest. * * * The ordinary rule is that in the absence of some statute expressly or impliedly authorizing interest, interest cannot be allowed on an assessment nor included therein. * * * If the statute authorizes

a city to issue bonds in anticipation of the subsequent payments of the assessments in order to pay for the improvements, the interest on such bonds may be included in the assessment as a proper item thereof."

In *Hulbert v. City of Chicago,* 213 Ill. 455, 72 N. E. 1099, the court said:

"It is next contended that sections 42 and 86 of the Local Improvement Act, in accordance with the terms of which, by the ordinance, the assessment was divided into installments, and bonds to anticipate the payment of the deferred installments, were provided for to be issued, are unconstitutional, on the ground that the Legislature had no authority to fix the rate of interest which said installments and bonds should bear at five per cent. No authority has been cited to sustain that position. It is, however, urged that the effect of said sections is to deprive the property owner of his property without due process of law, in this, that the rate of interest on the deferred installments and bonds cannot be fixed at a lower rate by the city than five per cent., and it is said that the city, if untrammeled by the statute, might be able to issue and negotiate the same at a lower rate than that fixed by the statute. We cannot agree with the view of appellant, but are of the opinion the Legislature had the right to fix the rate of interest which said deferred installments and bonds, when issued, should bear, and that those sections of the statute are not in conflict with the Constitution."

In *Erickson et al v. Cass County et al.,* 11 N. D. at page 505, 92 N. W. at page 847, the court said:

"The statute in question merely authorizes the county commissioners, acting on behalf of the persons interested in the drain, to provide means for paying the cost of the construction of the same by issuance of bonds, and to postpone the time of payment by dividing the assessments required to pay such cost of construction into as many equal parts as the bonds have years to run. When the assessments are charged against their lands, the owners may pay the same without interest or penalty, if they see fit to do so. No authority is cited to the effect that it is beyond the power of the Legislature to provide for payment for the construction of drains by the issuance of bonds, and to distribute the assessments as authorized by the section in question. It is a power very fre-

quently conferred and exercised, and, so far as we are informed, it is not open to any constitutional objection. See *Hellman v. Shoulters* [114 Cal. 136] 44 Pac. 915; *Davidson v. City of New Orleans,* 96 U. S. 100, 24 L. Ed. 618; *Bauman v. Ross,* 167 U. S. 548, 17 Sup. Ct. 966, 42 L. Ed. 270; *Martin v. Tyler,* 4 N. D. 289, 60 N. W. 392, 25 L. R. A. 838; *Irrigation 'Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; *People v. Swigert* [130 Ill. 608] 22 N. E. 787."

We are therefore of opinion that the court was right in sustaining the assessment proceedings, and in effect holding, as to them, that the bar of the statute (Comp. Laws 1909, sec. 728; Rev. Laws 1910, sec. 644) had fallen upon the objection thereto urged by the plaintiff, but erred in holding that the assessments levied against the property involved should bear six per cent. interest only per annum prior to maturity, and, if not paid when due, should thereafter bear interest at the rate of ten per cent. only per annum until the sale of the property.

The cause is therefore reversed and remanded, with directions to dissolve the injunction and modify the judgment so as to permit the collection of seven per cent. interest per annum on the assessments, if paid when due, and, if not, interest at the rate of eighteen per cent. thereafter until paid. In all other respects the judgment is affirmed.

HAYES, C. J., and KANE and WILLIAMS, JJ., concur; DUNN, J., disqualified.

---

ON REHEARING.

TURNER, J. On rehearing the contention is made "* * * that, in so far as this statute authorizes, or purports to authorize, the collection of a greater rate of interest than the bond on its face bears, that is, the seven per cent. on each assessment from date until maturity, and eighteen per cent. from maturity until paid," the same is contrary to the Constitution, art. 5, sec. 46r, which reads:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing. * * * Sec. 46r, fixing the rate of interest."

Not so. As between the bondholder and the property owner these assessments are not founded on contract, but are a species of taxation, and hence cannot be said to be a debt. Neither is this eighteen per cent. interest as such, but a penalty prescribed for failure to discharge a duty imposed by law. And, it may be added, the same power which gives the state the right to impose a penalty for the nonpayment of general taxes gives the right to impose this eighteen per cent as a penalty for the nonpayment of these assessments when due.

Laws of Assessments (Hamilton) sec. 17:

"Taxation by special assessment is a compulsory charge upon real estate within a predetermined district, made under express legislative authority, for defraying in whole or in part the expense of a permanent public improvement therein, enhancing the present value of such real estate, and laid by some reasonable rule of uniformity based upon, in the ratio of, and limited by, such enhanced value."

And in the same volume, section 17:

"The theory of all taxation is, that taxes are imposed as a compensation for something received by the taxpayer. General taxes are paid for the support of government in return for the protection to life, liberty and property which government gives. Assessments of benefits accruing to property by reason of public improvements rest on the same principle. Both forms of taxation are for public purposes, and both are alike burdens upon property. The only substantial distinction between the two forms is, that general taxation is based upon value and subject to the constitutional rule of uniformity, while assessments are not."

*McKeesport Borough v. Fidler,* 147 Pa. 532, 23 Atl. 799, was *assumpsit* by the borough to recover an assessment for the cost of constructing a sewer. The court said:

"Being a tax, the assessment cannot be collected as an ordinary debt by a common-law action, unless such remedy is given by statute. This view was fully adopted by the Supreme Court of the United States in the case of *Lane County*

*v. Oregon,* 7 Wall. 71[19 L. Ed. 101], in which explicit approval is given to various decisions of state courts, cited in the opinion, which hold that assessments of taxes do not create debts which can be enforced by suit. The case of *Shaw v. Peckett,* 26 Vt. 482, is one of those, in which the Supreme Court of Vermont said: 'The assessment of taxes does not create a debt that can be enforced by suit, or upon which a promise to pay interest can be implied. It is a proceeding *in invitum.'* Another of the cases cited was *City of Camden v. Allen,* 26 N. J. Law (2 Dutcher) 398. It was an action of debt to recover a tax brought by the municipality to which it was due. The Supreme Court of New Jersey said: 'A tax, in its essential characteristics, is not a debt, nor in the nature of a debt. A tax is an impost levied by authority of government upon its citizens or subjects for the support of the state. It is not founded on contract or agreement. It operates *in invitum.* A debt is a sum of money due by certain and expressed agreement. It origtinates in and is founded upon contracts express or implied.' "

The question here was raised and squarely passed upon in *Seaboard Natl. Bank v. Woesten,* 176 Mo. 49, 75 S. W. 464. That was a suit upon a special tax bill issued by the city of St. Louis for the reconstruction of a certain street in the city. The plaintiff sued as the assignee of the original contractor, to whom the tax bill was issued. There was judgment for plaintiff, and defendant appealed. The second error assigned was that the 'provisions of section 25, art. 6, of the charter of St. Louis, which allowed a recovery of fifteen per cent. interest per annum, if the tax bill was not paid within six months after demand, was unconstitutional, in that it violated section 53 of article 4 of the Constitution, identical with our Constitution, art. 5, sec. 46r, *supra.* The court said that the nature and character of the fifteen per cent. in question was set at rest in *Town of Tipton v. Norman,* 72 Mo. 380, and *Eyerman v. Blaksley,* 78 Mo. 145. Quoting from the latter case, the court said:

" "The provision of the charter allowing the holder of the tax bill fifteen per cent. per annum, if payment of the tax bill be not made within six months after payment is demanded and

refused, is of the nature of a penalty. It is not interest. Interest at ten per cent. per annum had been previously provided for, and, although the fifteen per cent. allowed by the ordinance in a certain contingency is denominated 'interest,' it is in reality a penalty to secure prompt payment, interposed for neglect of duty, and municipal corporations have the power to prescribe reasonable penalties for the neglect or refusal to discharge any duty imposed upon a citizen by a valid ordinance.' * * * Having thus reached the conclusion that the fifteen per cent. is a penalty and not interest, the constitutional contentions drop out of the case, for they depend upon the existence of the first postulate that it is interest. If it is not interest, but a penalty, the prohibition of section 53 of article 4 of the Constitution against the power of the General Assembly to pass any local or special law 'fixing the rate of interest' has no application. And the same is true as to the prohibition against the passage of a local or special law, where a general law could be made applicable. * * * The same power that gives the state a right to impose a penalty of one per cent. a month for failure to pay general taxes gives the city of St. Louis the right under its charter to impose a penalty of one and one-quarter per cent. a month for failure to pay a special assessment of benefits."

It follows that, not being interest, the imposition of the eighteen per cent. penalty is not in conflict with Const. art. 14, secs. 2 and 3, fixing the rate of interest, but is valid and enforceable.

HAYES, C. J., and KANE and WILLIAMS, JJ., concur; DUNN, J., disqualified.