NATIONAL ZINC COMPANY and Hartford Accident & Indemnity Company, Petitioners,

v.

Marvin Douglas VAN GUNDA and the State Industrial Court, Respondents.

No. 41111.

Supreme Court of Oklahoma.

May 11, 1965.

Covington & Gibbon, A. M. Covington, Tulsa, for petitioners.

Howard C. Triggs, Charles R. Nesbitt, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., Oklahoma City, for respondents.

BLACKBIRD, Justice.

The sole question to be determined is whether employer furnished claimant medical treatment in December, 1963, to toll the Statute of Limitations, where the claimant did not file his claim for compensation for an injury sustained on February 9, 1963, until March 4, 1964.

The parties will be hereinafter referred to as they appeared before the State Industrial Court: Marvin Douglas Van Gunda, claimant, National Zinc Co., Inc.,

employer, and Hartford Accident and Indemnity Company, as insurance carrier.

The parties stipulated before the trial judge as to all the jurisdictional facts and that claimant had sustained an accidental injury as alleged. Employer and its carrier denied the claim solely on the ground the claim was barred by the Statute of Limitations in that claimant failed to file his claim within a year after the accident. The cause was tried on all issues of disability and medical treatment.

■ The provisions of 85 O.S.1961 § 43, forever bar the right to institute a claim under the Workmen's Compensation Act if not filed with the State Industrial Court within one year from the date of the injury, or within one year from the last payment of compensation. By judicial construction, this Court has said that this section is a limitation upon the remedy, not upon the right, and the requirement may be waived; that there is no legal distinction between voluntary payment of compensation and the furnishing of medical treatment, both being indicative of the same thing: the recognition of liability; and during the time the employer voluntarily furnishes the employee medical attention, the statute of limitation is tolled. Shank v. Oklahoma Office & Bank Supply Co., Okl., 387 P.2d 626.

The trial judge found, among other things: (1) that "following said injury, claimant was furnished medical treatment for such injury on various dates, by respondent, the last date that medical treatment was furnished to claimant being December 23, 1963; that claimant's claim for compensation, Form 3, was filed on March 5, 1964, well within one year from the date that the last medical treatment was furnished to claimant; and therefore, claimant's claim is timely filed and the Statute of Limitations tolled"; (2) that "claimant was temporarily totally disabled from December 15, 1963, to December 27, 1963" for which he was entitled to compensation, and that the bill of Dr. D was incurred by claimant for necessary medical treatment because of the injuries, and the respondents

were liable therefor; that, in addition, claimant had sustained 5 per cent permanent partial disability to the body as a whole. The findings were affirmed on appeal to the court en banc.

Employer and carrier, as petitioners, bring this action for review of the lower court's order, and, for vacation of same, advance the following two propositions:

1. The cause is barred by limitations and the Industrial Court erred in finding the statute was tolled.

2. Industrial Court erred in ordering payment for temporary total disability and medical expense.

■ Where the issue of whether a limitation statute has been tolled or waived is a question of fact, the finding of the State Industrial Court thereon will not be disturbed on review when reasonably supported by competent evidence. Fullhart Maytag Co. v. Stapleton, Okl., 356 P.2d 350; United Brick & Tile Co. v. Roy, Okl., 356 P.2d 107; Cupit v. Dancu Chemical Co., Okl., 316 P.2d 593; Determan v. Wilson & Co., Okl., 304 P.2d 1060.

The only lay evidence in the record is the testimony of claimant. He testified that at the time of the hearing, April 9, 1964, he was employed by petitioner, National Zinc Company, and had been so employed for five years; that on February 9, 1963, he was operating an ore unloading scoop which was power driven by electricity but which was controlled along the floor by hand; that as he ran the scoop along the floor of a box car, unloading ore, the scoop hit something, throwing him to the floor, injuring his low back; that this happened at around 9:30 A.M., and he continued to work until the end of his shift, which was 1:00 o'clock P. M.; that within an hour and a half or two hours after the accident, he informed his foreman, Jim Estes, of his injury; that on the day following the accident, employer sent him to Dr. A, who x-rayed his back; that he did not work for the next three days but then returned to work and continued to do so until Sunday, December 16, 1963, even though his back bothered him

during that period and occasionally he missed some time from work.

On the said December 16, 1963, which was a regular work day for him, he arose to go to work but couldn't get out of bed without the help of his wife; that he called his foreman, who at that time was Al Counterman, to tell him why he wouldn't be at work and that he was going to a doctor; Counterman told claimant to "call the safety man and tell him."

"Q. Did you call the safety man?

"A. I did.

"Q. Who is the safety man?

"A. Zeland Anders.

"Q. This gentleman who sits here in the court room?

"A. Yes, sir.

    *     *     *     *     *     *

"Q. And what did you tell the safety man?

"A. I told him I was down in my back and Al told me to call him, and I told him I was going to my doctor. He told me that he would—he was going to make a phone call or something, and he would call me back. He called me back and I went to my doctor."

Claimant testified that after the safety man called him back, he then called Dr. D who sent him to a hospital; that Dr. D checked his back, gave him some medicine and told him not to go to work but to return to see him the "following Monday" which was the next day; that on the following Monday he called employer and talked to a Mrs. Cough, who was the personnel nurse, and told her that he had been to see Dr. D the day before, that he had to return to Dr. D for an x-ray of his back and that he would not be back to work until Dr. D released him; that she did not voice any objection to his going to Dr. D nor did she volunteer that he see any other doctor; that he continued under Dr. D's treatment for "approximately two weeks", then was released and returned to work; that he was then sent to Dr. B by carrier for examination but that Dr. B did not treat him.

On cross-examination, claimant testified that when he talked to Anders, the safety man, he told him "I was down in the back and I was going to the doctor. He didn't say anything about who to go see" but told him it was "all right" to see Dr. D; that he did not make the appointment to see Dr. D until after he had called both the foreman and safety man and that neither of them suggested he see Dr. A, the company doctor.

Petitioners offered no rebuttal testimony to any of claimant's testimony.

Petitioners contend that claimant "never claimed a back injury" from the date of the accident until the Sunday morning he went to Dr. D; that he "worked regularly and without complaint" until some ten months later when the claimant asked to be compensated for the time he had missed in December "by reason of a back condition" at which time he was sent by employer to Dr. B for examination.

■ The record does not support these contentions. It was admitted by petitioners at the initial hearing that claimant had sustained an injury; the evidence is uncontradicted that employer sent claimant to its Dr. A for examination and x-ray of his back so petitioners knew claimant was claiming an injury to his back when the accident first occurred.

■ The evidence is undisputed that claimant did not "work regularly and without complaint." He testified "some mornings I would get up to go to work and I couldn't hardly get out of bed. I wouldn't work because I couldn't hardly get around." It is apparent, from this unrefuted testimony, that employer was aware of claimant's back condition and from whence it originated. Also there is no evidence that claimant was sent to Dr. B for examination "only" after claimant asked to be compensated for the time missed in December, 1963. Claimant testified that after he was released to return to work by Dr. D, carrier advised him by letter that it had made an appointment for him to see Dr. B.

Why had the appointment been made? It is obvious that on Sunday, December 16,

1963, when claimant first called his foreman, and then on his advice, the safety man, to report that he couldn't come to work because of his back condition, and the safety man then advised claimant he would have to make a call first, then reporting back to claimant it was all right for him to see Dr. D, that employer knew of what back condition claimant complained. It knew claimant had had trouble with his back off and on during the past ten or so months because of the accident. It knew that claimant was going to Dr. D after having been so advised and it knew claimant was off work for a period of time in December. The appointment was made with Dr. B for the sole purpose of ascertaining what disability, if any, claimant had sustained because of the back injury.

Dr. B, by written report, to carrier of his observations because of the appointment, stated that "there is discomfort to deep palpation and percussion" in the right lumbodorsal area; that claimant had a low grade residual of a vertebral epiphysitis which predated his injury, but that in his opinion claimant had sustained a 5 per cent permanent partial disability to his body as a whole due to aggravation of the pre-existing condition as a result of the accident.

Petitioners further contend that when claimant called the foreman and safety man, he didn't associate his present back trouble with the accident in February and when he failed to do that, "he did not request the company to send him to a doctor but simply told them he was going to his own doctor"; and that therefore, they did not authorize the treatment by Dr. D, and were not liable for same.

■ We feel, however, that, under the circumstances and undisputed evidence, employer knew, or should have known, that claimant's complaint of being "down in the back" was a result of the prior injury and that it authorized claimant to go to Dr. D

for treatment by its not voicing any objection, and by saying "all right" on being advised he was going to go to Dr. D.

■ The finding by the trial tribunal that claimant was furnished medical treatment by petitioners, the last of which was in December, 1963, and that same tolled the statute of limitations, is reasonably supported by competent evidence.

■ We agree in part with petitioners' second contention. The lower court erred in finding that claimant was temporarily totally disabled from December 15, 1963, to December 27, 1963, because of the injury. The record is completely void of any medical evidence that claimant was temporarily totally disabled for the above period of time.

We have held, too often for citation, that where a disability, for which compensation is sought, is of such character as to require a determination of its nature, cause and extent by skilled and professional persons, proof thereof must be made by the evidence of such persons, and in the absence of such evidence, the award will be vacated. Therefore, that part of the Industrial Court's order awarding temporary total compensation is hereby vacated.

■ We do not agree, however, that the court erred in ordering the payment of Dr. D's medical bills. When petitioners acquiesced in claimant's selection of doctors, it became liable for the payment of that doctor's bills.

There is ample medical evidence to support the lower court's finding as to claimant's sustaining 5 per cent permanent partial disability.

The award is modified by vacating that part of the trial court's order pertaining to temporary total disability; and, as modified, it is sustained.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, IRWIN, BERRY and HODGES, JJ., concur.