Chris C. CYRUS, and The Workers' Compensation Court, Respondents,

v.

VIERSON & COCHRAN, INC., and The Travelers Insurance Company, Insurer, Petitioners.

No. 55962.

Court of Appeals of Oklahoma, Division No. 2.

June 16, 1981.

Released for Publication by Order of Court of Appeals July 16, 1981.

Douglas R. Hilbert, Liebel, Shumake & Hilbert, Oklahoma City, for respondents.

Yvonne Sparger Nichols, Edmond, Looney, Nichols, Johnson & Hayes, Oklahoma City, for petitioners.

BRIGHTMIRE, Judge.

Instead of mailing the claimant, Chris Conley Cyrus, his final check, a company spokeswoman told him he would have to pick it up at the site of the drilling rig where he had worked up until two weeks earlier. Once at the site, he was told by the foreman to see another employee named "Red." Red accused claimant of stealing a new pair of boots at the time he quit. Claimant denied it, but nevertheless Red and another hand, Jerry, began to curse and physically attack him and tell him that he could get his check as soon as he brought Jerry a new pair of boots. Claimant, upon being told he had better leave, started walking toward his car, "out the back doghouse." He was on his way down some stairs when Jerry hit him causing him to lose his balance and to fall about 16 feet to the ground resulting in serious injuries to various parts of his body.

The trial judge entered a 300 week temporary total order. The court *en banc* affirmed it. Petitioners, Vierson & Cochran, Inc., and Travelers Insurance Company, invoke our original jurisdiction for review.

### I

Petitioners' first contention is that the court had no sufficient basis for finding that claimant sustained an accidental injury arising out of and in the course of his employment.

Prefatorily they acknowledge the high court's commitment to the conclusion that an employee sustained an "accidental personal injury" which arose "out of and in the course of her employment" when she returned to the employer's premises to turn in some company property and to pick up her last pay check several days after she quit the job. *Solo Cup Company v. Pate*, Okl., 528 P.2d 300 (1974). The argument is, however, that the *Solo* concept is not relevant here because while claimant was "in the course of his employment" (on premises to get his check), his injuries did not "arise out of" the employment in that he became involved in an altercation concerning a "purely personal," nonjob-related matter. Petitioners cite *Stanolind Pipe Line Co. v. Davis*, 173 Okl. 190, 47 P.2d 163 (1935), for the distinction between two essential elements of proof, namely, whether the injury was one sustained "in the course of" and "arising out of" the employment. Also cited is *Mullins v. Tanksleary*, Okl., 376 P.2d 590 (1962), for an example of a situation in which an employee is assaulted in the course of his employment but his resulting injuries are not considered to have arisen from the employment; that is, the assault is by "a third person through animosity, ill-will or other 'personal' causes wholly disconnected from employment, or where a wilful injury is inflicted by an unknown assailant for no apparent reason . . . ."

The trouble with the argument is, however, that the language quoted from *Mullins* is abstract obiter dictum. Its holding is that the injured employee was covered by the Act because the "antecedent to the assault lay within that range of work-connected peril which was inseparable from the risk incidental to employment." The facts were that the employee was delivering a load of sheetrock to a lumber yard. He said to a yard employee, "Say, Dubby, where do you want this sheetrock stacked?" The yard man thought he had been addressed as "Dummy" or "Dopey" and socked the visitor in the jaw.

■ A general rule referred to in *Mullins* is quite relevant here. It is that where there is some causal connection between claimant's employment and the assault, or where the conditions of the employment have the effect of exposing the employee to an assault, any resulting injury, absent extenuating circumstances, is compensable.

■ In the case at bar there is no escape from the fact that the conditions of claimant's employment exposed him to the assault. There was indeed some causal connection between the act of trying to pick up the check, as he had been directed to do, and the battery. As a matter of fact, the evidence warrants the inference that company personnel lured claimant back to the job site for the express purpose of affording Red and Jerry an opportunity to confront him with the boot theft charge.[1] Finally, the fate of petitioners' "purely personal visit" defense was doomed by the evidence that the company man who held the check either demanded or acquiesced in the demand that claimant give a new pair of boots to Jerry as a condition to gaining possession of his check. Any doubt about a causal nexus vanished with the adduction of this proof.

We hold the trial court properly found claimant's injuries were compensable.

## II

■ The second fault found with the order is that it does not contain specific findings with reference to each injured part of claimant's body. More particularly, the complaint is that since claimant alleged in his Form 3 that he suffered injury to his "BACK, LEGS, FEET, HEAD, NECK [and] RIBS," but the trial court mentioned an injury only to claimant's "HEAD, NECK,

---

1. Actually, the company is probably fortunate that the claimant seeks only workers' compensation. He might have sued the company for conspiratorially aiding and abetting the unlawful attack, exposing it to both compensatory and punitive damages.

and BACK," the facts concerning injury to his legs, feet and ribs were left unfound.

The argument is that the court must pass not merely on claimant's injury-related status, but specifically on each and every body-member injury mentioned in the Form 3 because, if he does not, the ones not mentioned in the temporary order remain "in a suspended state."

The merit in this forensic effort is invisible. Logically, it would seem, all the trial judge needs to find at the temporary disability hearing is that claimant has sustained a sufficient work-related injury to support the order he makes—in this case one for 300 weeks of temporary total disability compensation. The trial court found that injuries to claimant's head, neck and back were of such a nature as to totally disable claimant, at least temporarily. The evidence justifies the finding. This does not mean, however, that no other injuries were sustained in the fall. There may well have been. And if there were, they may or may not have a bearing on whatever permanent disability the worker may eventually be found to have sustained. Certain it is that unadjudicated injuries remain open for later judicial disposition.[2]

### III

The petitioners' last contention is that the statutory allowance of 18 percent interest on the monetary accruals from the date of the award as required by 85 O.S.1977 Supp. § 3.6(A) & (B), is unconstitutional because it is a "special law" fixing an "excessive" rate of interest—a rate higher than that speci-

fied for judgments generally.[3] The rate is, continue the petitioners, in reality, a penalty imposed on an aggrieved employer and his insurance carrier who want to appeal an award. Thus, it is aimed at discouraging employers from exercising their right to appeal. Such impairment of the appellate rights of a particular class of litigants, continues the argument, operates to deny such class its federally guaranteed right to equal protection of the laws.

■ To begin with, the interest rate is not excessive in terms of today's money market. We take judicial notice of the fact that the prime interest rate[4] today exceeds 20 percent and that finance rates on, for instance, Visa card charges are currently 21 percent, and small loan short-term financing runs even higher. The fact is that the statutory 12 percent interest rate on judgments other than those for workers' compensation has now become too low. So low, in fact, as to invite judgment debtors to prosecute meritless appeals and postpone payment in order to invest money belonging to the judgment creditor at a net interest profit of from three to eight percent per annum during the pendency of the appeal.

■ Secondly, we do not agree that the special rate set up in the Workers' Compensation Act can be condemned as a "special" law within the meaning of the Oklahoma Constitution, Art. 5, § 46.[5] A law, to be "general" in operation, need not be universal in its application nor effect all things or persons alike.[6] It is enough if the law establishes a reasonable classification of persons, entities or things, sharing the type

---

**2.** *Oklahoma City Tent & Awning Co. v. Malson,* Okl., 362 P.2d 971 (1961).

**3.** Although petitioners failed to raise this point in their petition for review, we have elected to address the issue.

**4.** The rate banks charge their largest and best customers.

**5.** Article 5, § 46 reads in pertinent part:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:

. . . .

"Fixing the rate of interest."

**6.** *Barrett v. Board of Com'rs of Tulsa Cty.,* 185 Okl. 111, 90 P.2d 442 (1939).

of situation or circumstance [7] which bears a rational relationship to some legitimate legislative objective.[8]

■ Thirdly, if we assume the challenged interest rate was higher than the prevailing rates in 1977 when the legislation was enacted, we can also assume the lawmaker's objective was to discourage frivolous appeals which, to phrase it in the vernacular of lawyers who represent claimants, were said to have often been prosecuted by less conscientious employers and insurance companies to "starve" helpless victims of industrial injuries into early and cheap settlements. If indeed this sort of thing does go on and the legislature has undertaken to combat it through means of an elevated judgment interest rate, then the objective is not arbitrary but an appropriate, reasonable and laudable one.[9]

■ In any event, the assailed classification is shielded by a presumption that it is a permissible one casting the burden of showing otherwise on the assailant.[10] This burden petitioners have not borne. Furthermore, if the classification is reasonable and bears a rational relationship to a legitimate state objective, and the law affects all members of the class alike, the statute does not deprive petitioners of their federal constitutional right to equal protection of the law.[11]

■ And finally, petitioners say that subject interest rate is, in reality, a penalty for prosecuting a meritless appeal. We do not think it is, but if it is, the challenged statute is unaffected by Art. 5, § 46 because its primary thrust is penal and not "[f]ixing the rate of interest." [12]

### IV

We affirm the court *en banc* and remand the cause for further proceedings.

BACON, P. J., and BOYDSTON, J., concur.

7. *Fenimore v. State*, 200 Okl. 400, 194 P.2d 852 (1948).

8. *Wilkinson v. Hale*, 184 Okl. 165, 86 P.2d 305 (1939).

9. *Id.*

10. *Harris v. State*, 74 Okl.Cr. 13, 122 P.2d 401 (1942).

11. *Kirk v. Board of Cty. Com'rs, Muskogee Cty.*, Okl., 595 P.2d 1334 (1979).

12. *Shultz v. Ritterbusch*, 38 Okl. 478, 134 P. 961 (1913), *dismissed*, 232 U.S. 719, 34 S.Ct. 601, 58 L.Ed. 813 (1914).