**SIMMONS INDUSTRIES and Own Risk, Petitioners,**

v.

**Ronald HARTMAN and the Workers' Compensation Court, Respondents.**

**No. 74392.**

Court of Appeals of Oklahoma, Division 2.

Dec. 11, 1990.

Rehearing Denied Jan. 14, 1991.

Certiorari Denied March 12, 1991.

Susan Witt Conyers, Sturm & Brawner, Oklahoma City, for petitioners.

Sean P. Sullivan, Frasier & Frasier, Tulsa, for respondents.

BRIGHTMIRE, Chief Judge.

Did the Workers' Compensation Court three-judge panel err in affirming the trial court's award of additional temporary total disability benefits and medical expenses of the claimant for a neck injury arising out of the same job-related accident which caused a previously compensated back injury? We hold that it did not.

I

On October 22, 1986, the claimant, Ronald Hartman, was employed as a manual laborer for the employer, Simmons Industries. The claimant's job involved shoveling ice to other parts of a storage compartment from a place where it accumulated near an ice-making machine. While standing on a large hill of ice, the claimant slipped and lost his balance, falling backward and sliding approximately twenty-five

feet down the hill, injuring his back, neck and right arm. Immediately after the accident, the claimant experienced pain "[f]rom up between [his] shoulder blades down [his] back, around [his] side and around through [his] groin and down [his] leg, real bad, and from down in [his] back a little lower it [came] around [his] side and [came] down to [his] groin and pain all down the backs of [his] legs."

The claimant was examined by the employer's doctor several days after the accident, and was advised that there was nothing wrong and that he could return to work. The pain persisted, however, so the claimant sought the advice of his family doctor, who proceeded to refer the claimant to several specialists.

On July 1, 1987, the claimant filed a Form 3 alleging an injury to his back arising out of an on-the-job accident October 22, 1986.

On March 1, 1988, a hearing was held on the issue of temporary total disability. The claimant stated that prior to the accident he had had no trouble with his back or neck. The medical evidence consisted of two reports by physicians, both of whom mentioned the claimant's work-related accident and his complaints of neck and back pain.

The claimant's expert, Dr. Hallford, opined that the claimant had been temporarily totally disabled since June 3, 1987, due to "severe neck and back problems which have resulted out of the injuries he sustained on October 18, 1986 [*sic*], during the course of his employment with Simmons Industries." He added that the claimant "has symptoms of radiculitis in both his right arm and right leg and could very well have a ruptured disc in both regions, but [the claimant] has objective evidence of sensory loss and weakness in his right arm and hand indicative of C7/C8 radiculitis." Dr. Hallford concluded that the claimant's condition may require "surgical intervention" and noted that the claimant was scheduled to see a neurosurgeon the following week.

The employer, on the other hand, introduced a report by Dr. Chesnut who concluded that the claimant had no temporary or permanent impairment due to the fall. He stated that the claimant "has cervical spondylosis with spinal stenosis at C5–C6 level, possibly C6–C7." Referring to the accident on October 22, 1986, as the "alleged injury," the physician stated that the claimant's pathological "changes are primarily due to osteophyte formation and he has no evidence of [a] frank herniated disc." Dr. Chesnut opined that the "changes [were] old and not due to or aggravated by [the] alleged injury"; and that the claimant "may work, [and] needs no further medical treatment. . . ."

On March 4, 1988, the trial court entered an order awarding the claimant temporary total disability benefits. It found that the claimant had sustained an accidental injury to his back arising out of and in the course of his employment and was entitled to compensation from November 24, 1987, for a period not to exceed 150 weeks. The employer was ordered to furnish the claimant the "necessary medical treatment, care and attention for correction of claimant's condition brought about by said injury by a competent physician to be selected by claimant." This order was not appealed.

The claimant was paid temporary total disability benefits until November 25, 1988, when the benefits were discontinued pursuant to Workers' Compensation Court Rule 15, 85 O.S.Supp.1989 ch. 4, app.

On December 21, 1988, the claimant requested a second hearing on the issue of temporary total disability. He alleged that he was still disabled despite the termination of benefits and requested that medical treatment continue from November 25, 1988, for an indefinite period.

On February 28, 1989, a second hearing was held before a different judge on the issue of temporary total disability. The claimant again related how the accident had occurred and outlined the extent of his injuries. He described his injuries as "a pain in [his] back going down [his] right leg and around and down into [his] groin and [he] had pains up, [came] down [his] back and down [his] arm and [he] had a big knot" which formed on his back. The

claimant further testified that he had never experienced any difficulty with his neck prior to the October 22, 1986, accident.

The claimant's medical evidence consisted of a report by Dr. Covington, the neurosurgeon who had performed an anterior discectomy and fusion on the claimant at C5–6 and C6–7 on March 18, 1988. The employer's objections to the introduction of this report on competency and probative value grounds were premised generally on violations of Workers' Compensation Court Rule 20. Specifically the employer alleged that the report did not address the proper standard for determining temporary total disability. Consequently the claimant was given leave of court, without objection, to supplement his medical evidence. The neurosurgeon's deposition was taken April 26, 1989, and filed with the court May 22, 1989. The employer offered the report of Dr. Framjee and another report by Dr. Covington dated January 12, 1989.

On July 19, 1989, the trial court entered an order awarding the claimant additional temporary total disability benefits from November 25, 1987, to April 13, 1989 (less nine days that the claimant worked) based on a finding that the claimant's back injury had "exacerbated a pre-existing neck condition (degenerative spondylitic disease) necessitating surgery (anterior discectomy) to the claimant's neck (C5–6 and C6–7) on March 18, 1988." The court also ordered the employer to pay certain enumerated medical expenses incurred by the claimant, and reserved ruling on other bills pending proper certification and a later hearing.

The employer appealed the July 19, 1989, order to a Workers' Compensation Court three-judge panel and on October 27, 1989, it affirmed the order.

The employer seeks review of the order.

## II

■ The employer's principal contention may be framed this way: The trial court's order of March 4, 1988, awarding temporary total disability benefits for the claimant's back injury is a final order which could not later be modified by the trial court unless founded on a change of condition for the worse.

The argument is that since the lay and expert testimony presented at the first hearing made specific reference to the claimant's neck injury, and the trial court only awarded compensation for an injury to the back, the court by implication agreed with the employer that injuries to the claimant's neck were not compensable. We disagree.

■ The essential findings necessary for resolving the issue of whether a claimant is entitled to temporary total disability compensation differ from those required for determining whether he is entitled to benefits for permanent partial disability. The former requires only a finding that the claimant has sustained sufficient work-related injury to support an award for the healing period, *i.e.*, the period of time following the accidental injury when the employee is totally incapacitated for work due to illness resulting from injury. *Bama Pie, Inc. v. Roberts*, 565 P.2d 31 (Okl.1977). Itemization or categorization of multiple effects of an injurious accident is unnecessary.

In *Cyrus v. Vierson & Cochran, Inc.*, 631 P.2d 1349 (Okl.App.1981), the employer complained that the workers' compensation order did not include specific findings with reference to each injured part of the claimant's body in a temporary disability hearing and argued that it was necessary for the court at that time to pass not only on the claimant's injury-related status, but specifically on each body-member injury mentioned in the Form 3. In rejecting this argument we said:

"Logically, it would seem, all the trial judge needs to find at the temporary disability hearing is that claimant has sustained a sufficient work-related injury to support the order he makes.... The trial court found that injuries to claimant's head, neck and back were of such a nature as to totally disable claimant, at least temporarily. The evidence justifies the finding. This does not mean, however, that no other injuries were sustained in the fall. There may well have

been. And if there were, they may or may not have a bearing on whatever permanent disability the worker may eventually be found to have sustained. Certain it is that unadjudicated injuries remain open for later judicial disposition."

*Id.* at 1353.

■ Moreover, an injured employee who has been paid temporary total disability benefits may have a recurrence of temporary total disability, and if there is any competent evidence reasonably tending to show that such temporary total disability is a result of the same accidental injury, an award based on such evidence will not be disturbed. *Pittsburgh Plate Glass Co. v. Davison,* 190 Okl. 228, 122 P.2d 388 (1942); *Amerada Petroleum Corp. v. White,* 179 Okl. 82, 64 P.2d 660 (1937).

■ A claimant is not required to set out the nature and extent of his injuries in his Form 3 with exact precision. *National Zinc Co. v. Carter,* 442 P.2d 488 (Okl.1968). The parties recognize this. It follows, therefore, that the failure of the claimant to allege an injury to his neck in his Form 3 does not preclude recovery for such injury if indeed it was caused by the accident in question. *Davis–Wharton Drilling Co. v. James,* 337 P.2d 1094 (Okl.1959).

The record reflects that the claimant promptly reported the accident and his injuries to the employer. The claimant was examined by several doctors, including those selected by the employer, who were each given a history of pain in the claimant's back and neck, secondary to the work-related fall. The claimant was ultimately referred to Dr. Covington in November 1987, and surgery was performed the following March. After the accident, the employer was afforded ample opportunity to make such tests and examinations as it deemed necessary to determine the extent and nature of the claimant's injuries. The employer was not prejudiced by the failure of the claimant to more accurately describe his injuries in his initial notice of injury. *Guy James Constr. Co. v. Harris,* 434 P.2d 150 (Okl.1967); *National Zinc Co. v. Van Gunda,* 402 P.2d 264 (Okl.1965).

The employer's argument that the claimant could have appealed the trial court's order of March 4, 1988, if he felt aggrieved by the court's ruling rather begs the issue because it is obvious he was not aggrieved. He was awarded what he sought, *i.e.,* temporary total disability benefits and medical expenses.

The supreme court, in *Pruitt v. Mid–Continent Pipe Line Co.,* 361 P.2d 494 (Okl.1961), recognized that an order allowing benefits for temporary total disability during the continuance of the claimant's healing period, differs from a final award granting compensation for permanent disability. The court held that:

"An order allowing benefits during the continuance of the healing period is neither accumulative in its nature, nor does it constitute a final award.... The benefits must under the law be terminated when temporary total disability ceases and the workman is either cured or his condition becomes stationary so as to permit evaluation of permanent effects, if any, resulting from his injury. Such order, it is apparent, is only interlocutory. It merely takes into consideration the immediate condition and need for which temporary provision is made. The matter of a final adjudication is left for a future disposition."

*Id.* at 497.

The employer relies on *Williams v. Central Dairy Products Co.,* 205 Okl. 266, 236 P.2d 984 (1951), and *Reaves v. Uniroyal Tire Co.,* 671 P.2d 679 (Okl.App.1983), to support the proposition that the award of March 4, 1988, was a final order not subject to modification unless founded on a change of condition under 85 O.S.1981 § 28. Both of those cases involved attempts to modify permanent disability awards, not temporary orders.

In neither *Williams* nor *Reaves* did the claimant seek (1) to reinstate temporary total disability benefits as opposed to attempting to receive additional benefits after an award for permanent partial disability; (2) to receive compensation for a sepa-

rate injury not specifically adjudicated in an earlier order.

### III

We hold the March 4, 1988, order is supported by competent evidence and therefore must be sustained. *Parks v. Norman Mun. Hosp.*, 684 P.2d 548 (Okl. 1984).

Award sustained.

REIF, P.J., and MEANS, J., concur.